## John Crumes v. The State.

*No. 6746. Decided May 21.*

1. **Indictment for Assault with Intent to Rob** need not describe the property intended to be taken, nor aver that the accused intended to deprive the owner of the value of it.

2. **Same—Evidence.**—It is no longer a question that a witness may state his opinion as to the correspondence of footprints with boots or shoes.

3. **Same.**—Referring to certain hair found on a barbed wire fence near the place of the alleged offense, two witnesses were permitted to state that, in their opinion, that hair came off the body of the horse the defendant was shown to have ridden on the night of the offense. *Held,* that the evidence was properly admitted.

4. **Same.**—The State having proved by C., an officer, that he secured the pistol in evidence from the house of the defendant's father, a week after the alleged offense, the defense proposed to prove by the witness, on cross-examination, that the defendant's father surrendered the pistol voluntarily, and told him at the time that the defendant did not have the said pistol on the night of the alleged offense. *Held,* that the court properly rejected the proposed proof as no part of the *res gestæ* and as hearsay.

5. **Practice—Privilege of Counsel.**—The proof showing that the father of the defendant was present during the trial, the prosecuting attorney did not abuse his privilege of argument in commenting upon the failure of the defendant to examine him as a witness.

APPEAL from the District Court of Collin. Tried below before Hon. H. O. Head.

This conviction was for an assault with intent to rob Mrs. E. Wooten, and the penalty assessed against the appellant was a term of eight years in the penitentiary.

Mrs. E. Wooten was the first witness for the State. She testified, in substance, that she lived with her husband and six children about two and a half miles from Plano in Collin County. Her husband left home about 8 o'clock on the night of January 1, 1890, to go to the house of Mr. Brown, about 300 yards distant. About midnight the witness was aroused by two persons calling "halloa." She responded by asking what they wanted. They replied by asking if the man of the house was at home. Witness replied that he was not; that he was at Mr. Brown's. They then asked for sleeping accommodation for the night. Witness told them she could not accommodate them, as she had no place for them to sleep. One or the other insisted on being admitted, saying that they were tired, and would sit up all night. They then demanded that the door be opened. Witness got up to open the door, and as she went to the door she saw two men through the window. When she got the door open she was confronted by a large and a small man, the small man standing behind the large one. The large one had a mask on his face, and a pistol in his hand. As soon as witness got the door open the large man asked her if she had any money. She replied that she had not a cent. He then demanded a ring he discovered on witness's finger. Witness told him that the ring was given her in childhood by her brother, and that she would not surrender it; that it was of little value at best, as it was only silver. He then said if it was only a silver ring he did not want it. About this time the small man asked if any one of the household had any money. Her oldest boy, then thirteen years old, produced a nickel which he offered the parties, but the large man declined to receive

it on the statement that it was the only piece of money in the house. The witness did not recognize the large man, but she recognized the small one as Will Coleman. The witness was satisfied from its general appearance that the the pistol in evidence was the pistol exhibited by the large man at the time he demanded money.

The evidence for the State otherwise shows that the tracks of two men, one being a large square-toed boot track and the other a smaller round-toed shoe track, were found near Wooten's gate and traced to a point about one hundred yards distant, where a horse had been tied. Thence the horse track was traced about two hundred and fifty yards down the road. The said road ran between two wire fence enclosures. At one place the tracks showed that the horse ran into the wire fence, from which several horse hairs were taken. Persons long familiar with the defendant's noted horse "Wilson" declared it to be their opinion that the hairs taken from the fence were hairs of the said horse; and several witnesses testified that they closely examined the foot tracks, and afterwards, on the examining trial, closely observed the feet of defendant and Coleman, and that it was their opinion that the large boot track followed from Wooten's gate to where the horse had been tied was made by the boots of defendant, and that the shoe track was made by the shoes of Coleman. Several witnesses testified that they saw the defendant's horse "Wilson" on the morning after the alleged offense, and that he then showed to have been cut in two places within the preceding few hours. One cut was across the breast and the other across the leg, the cuts being such as would probably be made by the horse coming into violent contact with a wire fence. The defendant, with a man riding behind him on his horse, was seen by two or more witnesses in the town of Plano early in the night. Defendant and Coleman were located together at a party about a mile distant from Plano, as late as 11 o'clock on that night, when they left together. The attempted robbery occurred about 12 o'clock. Deputy Sheriff Crabtree testified that he got the pistol exhibited in evidence at the house of James Crumes, the father of defendant, about a week after the alleged offense.

*J. M. Pierson* and *M. H. Garnett,* for appellant.

*W. L. Davidson,* Assistant Attorney-General, for the State.

Willson, Judge.— In an indictment for an assault with intent to rob it is not necessary to describe the property which the defendant intended to take, nor is it essential to aver that the defendant intended to deprive the owner of the property of the value of it. In this case the indictment alleges all the elements of the offense, and the exceptions thereto were properly overruled. Morris v. The State; 13 Texas Ct. App., 65.

It was not error to permit witnesses to state their opinions as to the correspondence of tracks found at and near the place of the attempted robbery and the shoes worn by defendant, and also the shoes worn by one Coleman, who, on the same night of the offense, was seen in company with the defendant. Nor was it error to permit witnesses to state their opinions that the hair found on the fence was from a horse which the evidence showed defendant was riding on the night of the offense. As to the admissibility of such evidence there is no longer any question. Clark v. The State, *ante,* 189.

Defendant's third bill of exception shows no error. What James Crumes may have said when he delivered the pistol to the officer as to defendant not having had said pistol on the night of the attempted robbery was hearsay, and not *res gestœ*. James Crumes was a competent witness, and if he knew that defendant did not have the pistol on the night in question, he should have been produced to testify to that fact, if defendant desired such fact to be established. Whether or not James Crumes willingly delivered the pistol to the officer was irrelevant to the issue in this case. In this connection we will say that it was proper to permit the State to show that said James Crumes was in attendance upon the trial, and it was not improper for the district attorney in his concluding argument to comment upon the fact, and to argue that said James Crumes could have been placed upon the stand as a witness in behalf of defendant if the defendant had so desired.

Some exceptions were reserved by defendant to the charge of the court, and defendant requested special instructions, which were refused. We have given the charge of the court a careful examination, and in our opinion it is free from error. It presents fully and correctly the law of the case.

The evidence, we think, sustains the conviction, and there being no error shown in the record, the judgment is affirmed.

*Affirmed.*

Judges all present and concurring.