HARLESS vs UNITED STATES.

Opinion delivered April 2, 1898.

*Receiving Stolen Cattle—Evidence.*

The defendant received stolen cattle at nine o'clock at night from parties whom he claims to have purchased the cattle. Witnesses testified to various remarks which defendant is alleged to have made admitting his knowledge of the fact that the cattle were stolen though defendant denies making such statements. There was also testimony that the defendant endeavored to get the owner of the cattle to testify that he had authorized defendant's vendor to sell the cattle. When de-

fendant shipped the cattle he overloaded the cars in which they were shipped. *Held*, The facts disclosed were such as warranted the jury in finding that the defendant knew that the cattle had been stolen.

2. *Accomplice—Refusal of Instruction—Not Error.*

Defendant offered an instruction in regard to the testimony of an accomplice which was refused. The instruction was applicable only to the charge of larceny on which charge defendant was acquitted. *Held*, That having been acquitted on this charge, even though the instruction was wrongfully refused, it would not be error in this case, the conviction having been upon the account for receiving stolen property, to which the instruction was in no way applicable. *Held*, Further there was no proof in the record to show that the witnesses referred to were accomplices and the court properly refused the instruction in reference to the testimony of accomplices.

3. *Instruction—Error—Exception.*

In charging the jury as to the law in regard to receiving stolen property the court omitted the word "feloniously" from the charge, as applied to stolen. *Held*, Not erroneous. *Held*, Further that if the omission of the word "feloniously" was error, that defendant cannot complain of it, because not properly excepted to. It was necessary in order to have any such alleged error considered to specifically point out wherein the charge of the court was defectivee so that the court could have corrected its charge.

Appeal from the United States Court for the Northern District.

JOHN R. THOMAS, Judge.

John D. Harless appeals from a conviction of receiving stolen property. Affirmed.

At the December, 1896, term of the United States court for the Northern district of the Indian Territory, sitting at Muscogee, John D. Harless, appellant, was indicted for larceny of certain cattle from Moosa Nebaka, and also, in the same indictment, was charged with receiving stolen property. Harless was convicted in July, 1897, for receiving stolen property ; it being the fourth count in said in-

dictment. From this verdict and judgment of conviction, Harless prosecutes this appeal. There were originally three defendants in the case,—Orcutt and Charles McIntosh, besides Harless. Before the case was tried, it was dismissed as to Orcutt and McIntosh, and they were placed upon the stand as witnesses against Harless. There were seven assignments of error in the case, as follows: "Assignments of error: First. Because the verdict returned by the jury is without authority of law. Second. Because the verdict of the jury is contrary to the evidence. Fourth. Because the court erred in the admission of certain testimony before the trial jury, to which the defendant at the time objected as incompetent and irrelevant, and prejudicial to the defendant, and which testimony was preserved in the record, and made a part of the motion for a new trial in reference thereto, and to which ruling the defendant at the time excepted. Fifth. Because the court erred in refusing to give the special instructions asked for by the defendant, the same numbered one, two, three, and four, and made a part of the motion for a new trial by exhibit, to which action of the court, refusing special instructions, defendant at the time excepted. Sixth. Because the court erred in submitting the fourth count in the indictment to the consideration of the jury, there being no evidence in support of the same offered by the prosecution, to which action of the court defendant then and there excepted. Seventh. Because the court erred in charging the law in reference to accomplices, to which action of the court in so charging, defendant then and there excepted. The seventh assignment of error was on motion of the counsel for appellant, stricken from the record, and all reference thereto in the bill of exceptions will be disregarded.

*Stuart, Lewis & Gordon,* for appellant.

*Pliny L. Soper, U. S. Atty.,* and *L. F. Parker, Jr., Asst. S. Attorney,* for the United States.

(31)

SPRINGER, C. J. (after stating the facts.) Counsel for appellant in this case, without waiving any of the exceptions taken during the trial of the case, insist in their brief upon three specifications of error. These specifications are as follows: First, that there is no evidence in the record in the case, from beginning to end, which justified Harless' conviction for receiving stolen property, but that, if the evidence shows anything, it shows that Harless was guilty of larceny, and not of receiving stolen property; second, the refusal of the court to give the special charge requested by the defendant on the subject of accomplices; third, that the court erred in his charge to the jury in reference to receiving stolen property. We will consider these special assignments of error in the order in which they are stated.

The first special assignment is to the effect that there is no evidence in the record upon which the defendant could be convicted of receiving stolen property, and that, if the evidence shows anything, it shows that the defendant was guilty of larceny, and not of receiving stolen property. Counsel for appellant then submit certain extracts taken from the testimony of Charles Orcutt and Charles McIntosh. These extracts are produced for the purpose of showing that the evidence of these two witnesses, if it established anything, clearly established the fact that the appellant, if convicted at all, should have been convicted of larceny. The jury having found the defendant not guilty of larceny, if there were error in the record in reference to that charge which we are unable to discover, it would be immaterial, in so far as the case now stands. The defendant was convicted of receiving stolen property, knowing the same to have been stolen. In order to convict a person for the crime of receiving stolen property, it must appear—First, that the property was stolen by some person other than the defendant; second, that the defendant received the

property, and converted it to his own use; and, third, that the defendant knew that the property, when he received it, had been stolen. In the case at bar the stolen cattle belonged to Moosa Nehaka, an Indian, who testified that the cattle were taken without his consent. Counsel for appellant state that this testimony shows that the theft was committed. The corpus delicti is therefore established. But counsel for appellant insist that this proof does not even tend to show that the theft was committed by some person other than the defendant. The defendant became a witness in his own behalf. He testified that he purchased the cattle, for the receiving of which as stolen property he was indicted, from Charles McIntosh, and that at the time he purchased them he did not have the slightest suspicion that McIntosh had stolen those cattle. The testimony of Nehaka and the defendant, taken together, therefore, establishes two propositions: First, that the cattle were stolen property; and that the defendant did not steal the cattle, but purchased them from McIntosh. It is conceded in this case that Harless received the cattle at the stock pens at Red Fork, in the Indian Terriiory, and shipped them to the market, and received the proceeds of their sale. There remains, therefore, but one fact which it was necessary to establish in order to justify a conviction of the appellant for the crime of receiving stolen property, viz. that he received them knowing them to have been stolen. Guilty knowledge is a fact which can only be proven by circumstances. There re a number of circumstances testified to in the record which tend to show a guilty knowledge on the part of the appellant. E. E. Templin, a witness for the prosecution, testified: That he assisted Orcutt in gathering up the cattle. That he got them together about 11 o'clock. That he held them along the road until about an hour by sun, and that at that time Orcutt sent him out to see Harless. He met Harless, and had a conversation with him. That he

asked him if he was ready for the cattle, and he said he would be ready for them about 9 o'clock (this had reference to 9 o'clock at night,) and the place at which they were to be delivered was the stock pens at the railway station at Red Fork. That he saw Orcutt, McIntosh, and Harless that night, when they were driving the cattle towards the stock pens, about a half mile from the pens. Witness then returned home. Templin further testified that after the shipment of the cattle he had a conversation with the defendant, and that he told him "that Ben McIntosh, if he knew where witness was, would get out a warrant, and have him arrested;" defendant protested that he did not think it was right, and that, if witness would stick to him, he would stick to witness. Witness said that he told him "that he had nothing to stick about." Ben McIntosh, a witness for the prosecution (who, it will be remembered; is not the Charles McIntosh indicted with the defendant,) testified that in the month of September, after the defendant had been arrested for the larceny of these cattle, he had a conversation with him, in which the defendant Harless said to him (the witness,) "Well, just honestly and candidly I will tell you that I had those cattle rustled; but they have not proved it against us, and they will never be able to stick us." Chili Morgan, a witness called by the prosecution, testified that he had a covnersation with the defendant Harless after the prosecution began, who said that he wanted him to "work the rabbit's foot" for him; he wanted him to go and see Moosa Nehaka, and ask him to claim the "bar heart" cattle. Witness then went to see Nehaka, and Nehaka said the cattle were his. After that he saw the defendant Harless again at Red Fork. He wanted to know what Moosa said. Witness told Harless that Moosa claimed the cattle as his own. Witness said that Harless, the defendant, wanted him to get Nehaka to go on the stand and swear that he authorized Charley Mc

Intosh to sell those cattle to any cattle buyer that came along while he was gone to a called session of the Creek council. Witness said that he saw Nehaka, and told him what Harless said, and that Nehaka said that that would be perjury if he did. Witness then said that after this he told Harless, the defendant that Nehaka had declined to answer the question. Witness said that Harless agreed to pay Nehaka back the money that those cattle that were shipped brought. He said the money would be ready; that the cattle would be paid for if Nehaka would go on the stand and swear that he had given Charley McIntosh authority to sell them. Mose Perryman, a witness on behalf of the defendant, testified on cross-examination "that he went up to the stock yards where the cattle were being loaded on the cars; that he got there about 9 o'clock; that he went out to the gate, and they gave him him a scare; and that he did not stay. Witness says that he did not see Harless, but saw the men that were helping him. Just what scare was given him, the evidence does not disclose. It also appears in evidence that 64 head of cattle were loaded into two cars, which was regarded as overloading them. The testimony of these witnesses all tends to show guilty knowledge. The facts disclosed were such as warranted the jury in finding that the defendant knew that the cattle had been stolen. It is true that the defendant denied some of the conversations imputed to him, but in this conflict of testimony it was the province of the jury to determine whether they would believe a disinterested witness, as against the testimony of the defendant, who was subject to the temptation to testify so as to relieve himself of a criminal accusation.

*Facts showing guilty knowledge.*

The second special assignment of error insisted upon is the effect that the court erred in refusing to submit to the jury the instruction asked for by the counsel for defendant on the subject of accomplices. This error, as assigned in appellant's brief, includes the assignment of error on account

of the instructions which the court, as erroneously alleged, gave the jury on the same subject; but the assignment of error on this ground was specially withdrawn from the record by counsel for the defendant, no instruction of that kind having been given. The instruction requested by the defendant and refused by the court is as follows: "An accomplice cannot be convicted upon the uncorroborated testimony of one or more accomplices, and the corroboration must be such as to connect the defendant with the crime committed; and that it will not be sufficient if it merely shows the commission of the crime, without connecting the defendant with the original taking." It will be seen from an examination of the record that this requested instruction related to the charge of larceny, of which charge the defendant was acquitted. If it be conceded, for the sake of the argument, that the refusal of this instruction would have been error, had the defendant been convicted of larceny, yet, the defendant having been acquitted of this charge, the error could not have prejudiced the defendant, in so far as the charge for which he was convicted—that of receiving stolen property—is concerned. The requested instruction was predicated upon the testimony of Charley McIntosh and Orcutt, who were indicted as co-defendants with Harless. Before going to trial the prosecution dismissed the suit as to those persons, and they were introduced as witnesses on behalf of the government. The government relied upon their testimony solely for the purpose of establishing the count charging the defendant with larceny. The jury evidently disbelieved the testimony of McIntosh and Orcutt. They gave no testimony in reference to guilty knowledge of the defendant; hence it is immaterial in this case what instructions the court gave, or what it refused, in reference to the testimony of accomplices. The offense for which the defendant was found guilty was established independently of any person who could have been an accomplice in the case

In so far as guilty knowledge on the part of the defendant is concerned, which is the only really disputed question, there is in the very nature of the case no place for an accomplice. Guilty knowledge has no accomplices. There are accomplices in taking, in carrying away, and in receiving stolen property; but, when we reach the question of guilty knowledge, we have to consider the condition of one's mind,—the amount of information which he may have,—and in this condition of mind he is not aided or abetted by any other person. If it be conceded that the refusing of this instruction was error, it was an error in reference to the charge of larceny; and a verdict of guilty of receiving stolen property, which is a separate and distinct offense, will not be set aside on account of error in reference to some other offense charged in the indictment. Thomp. Trials, § 2402. But a careful examination of the testimony in this case discloses the fact that the court did not err in refusing this instruction, even had the defendant been convicted of the larceny of the cattle, instead of having received them as stolen property, knowing them to have been stolen. Both Orcutt and McIntosh, who took the cattle from the range, testified that they did not know that the cattle were stolen, and that Harless had told them that he had purchased the cattle. Harless himself denied that he had employed McIntosh and Orcutt to steal the cattle for him. The mere fact that McIntosh and Orcutt were indicted together with the defendant Harless proves nothing. The law presumes all defendants innocent until their guilt is established in a trial by evidence satisfying the minds of the jury beyond a reasonable doubt. There was no proof in the record to show that Orcutt or McIntosh were accomplices with Harless in stealing the cattle; hence the court properly refused the instruction in reference to the testimony of accomplices.

The third special assignment of error is to the effect that the court erred in its charge to the jury in reference to

the offense of receiving stolen property. The court's charge upon this subject is as follows: "If you believe from the evidence beyond a reasonable doubt that Charles McIntosh and Charles Orcutt, or any other person or persons, had stolen the cattle of Moosa Nehaka, and after that time, and within three years before the finding of the indictment, the defendant received and shipped said cattle, knowing the same to have been stolen, you should find the defendant guilty under that count in the indictment charging the defendant with receiving stolen property." The law of the United States under which this prosecution was had is contained in section 5357 of the Revised Statutes of the United States, and is as follows: "Every person who upon the high seas or in any place under the exclusive jurisdiction of the United States buys, receives or conceals any money, goods, bank notes or other things which may be the subject of larceny and which has been feloniously taken or stolen from any other person, knowing the same to have been taken or stolen, shall be punished," etc. Counsel for appellant, in their brief, insist that the court in its instruction failed to use the word "feloniously," as applied to "stolen," and that the omission of this word is error. It will be seen from the court's charge that the jury were told that if the cattle had been stolen, and the defendant, knowing the same to have been stolen, received and shipped them, he should be found guilty. It is impossible to conceive that the jury were misled by the failure of the court to use the word "feloniously," as applied to "stolen." If the failure to use this word had been error, it would have been incumbent upon counsel, when excepting to this instruction, to have pointed out the omission of this word, so that the court could have corrected the instruction at the time. The exceptions to the charge of the court are stated in the record as follows: "And now to the charge of the court as a whole the defendant excepts, because it does not set forth in sufficient detail the law of

the case; and the defendant excepts to the charge of the court on the weight of the evidence; and the defendant excepts to the charge of the court on accomplices, as not being the law; and the defendant excepts to the charge of the court on the subject of receiving stolen property; and the defendant excepts to the charge of the court touching the weight to be given to the testimony of the defendant. No one of these exceptions, unless it be the last one mentioned, is properly taken. It is not sufficient for counsel to state that they except to the charge of the court on the subject of receiving stolen property. They must point out wherein the charge was defective, so that the court could have corrected its charge, if there was any error in it. And so of the other exceptions. None of them were properly taken. But the jury were in no wise misled by the failure of the court to use the word "feloniously." They understood what was meant by the word "stolen," and when they were informed that if they found from the evidence that the property was stolen, and that if the defendant knew it was stolen, and received the same and converted it to his own use, he was guilty of receiving stolen property, there was no error in the instruction which was prejudicial to the defendant. A careful examination of the whole record in this case does not disclose any error. The judgment of the court below is therefore affirmed.

CLAYTON and TOWNSEND, JJ., concur.

Instruction — Exception must state defect complained of.