## GEO. HENDRIX v. STATE.

No. A-1242.    Opinion Filed January 18, 1913.

(129 Pac. 78.)

1. EVIDENCE—"Accomplice." The term "accomplice," as used in section 6836, Comp. Laws 1909, providing that no person shall be convicted of a crime on the testimony of an accomplice without corroboration, is construed as meaning one culpably implicated in the commission of the crime of which the defendant is accused; in other words, an associate, one who knowingly and voluntarily co-operates or aids or assists in the commission of the crime.

2. SAME—Testimony of "Accomplices"—Corroboration. A participant in a game of poker or other prohibited games played for money, checks, credit, or any representative of value is an accomplice of his adversary, within the meaning of the statute which requires the testimony of an accomplice to be corroborated.

3. SAME—Sufficiency of Evidence. In this cause, it is held that the testimony of the accomplice was sufficiently corroborated by the other evidence to justify the verdict.

(Syllabus by the Court.)

*Appeal from Bryan County Court;*
*J. L. Rappolee, Judge.*

George Hendrix was convicted of playing poker, and he appeals. Affirmed.

*C. C. Hatchett,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *Smith C. Matson,* Asst. Atty. Gen., for the State.

DOYLE, J. The plaintiff in error was informed against for the offense of unlawfully playing at a certain game of poker

for money. Upon his trial he was found guilty of gaming in manner and form as charged in the information. A motion for a new trial was duly filed and overruled, and he was sentenced to pay a fine of $25.

The first witness for the state, Jim Hickey, testified that he lives at Robbers' Roost, and went on the night of the day named in the information to Brown's Chapel schoolhouse on Twelve Mile Prairie, in Bryan county, and found there three boys, one of whom was the defendant, playing poker; that witness sat into the game, and they played about an hour, when one of the boys dropped out; that he did not know his name; that the defendant, George Hendrix, next dropped out, and witness continued playing with the other gentleman until Tom Stamford came in and put a stop to the game; that he had pleaded guilty, and paid a fine for this gambling. Tom Stamford testified that he lived on Twelve Mile Prairie, and went to the Brown's Chapel schoolhouse before daylight about 3 o'clock in the morning, and there found four boys; that he knew Jim Hickey and the defendant, George Hendrix; that the other two he did not know; that Hickey and one of the boys were playing cards with a common deck of playing cards; that the defendant was looking on, and the other boy was asleep. The state rested, and the defendant demurred, on the ground that the evidence was insufficient to support a conviction, which was overruled. The defendant did not offer any testimony. The defendant requested several instructions, all relating to the question whether or not the witness Jim Hickey was an accomplice of the defendant. The court refused to give these instructions or any instruction relating to the proposition that the witness Hickey was an accomplice of the defendant.

The learned counsel for the defendant in his brief says:

"The only proposition presented to this court and the proposition that is squarely presented to the court in this case is: Was the witness Hickey an accomplice of the defendant? We do not now contend that if this case had been submitted to the jury under proper instructions relative to the witness Hickey being an accomplice of the defendant, and the jury had returned a verdict of guilty, but that there was sufficient testimony upon which to base the verdict. We concede that, if the jury had been prop-

erly instructed as to the law, and had then found the defendant guilty, that there were sufficient circumstances corroborating the witness Hickey for the court to permit the verdict to stand."

The term "accomplice," as used in our Procedure Criminal (section 6836, Comp. Laws 1909), providing that a conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, in the absence of a statutory definition, includes all who are principals, as defined by our Penal Code as follows:

"Sec. 2045. All persons concerned in the commission of crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, are principals."

Words used in any statute are to be understood in their ordinary sense, except where a contrary intention plainly appears. An "accomplice" is defined in Wharton, Cr. Ev. pt. 440, as a person who "knowingly, voluntarily, and with common intent with the principal offender unites in the commission of a crime." We think the term "accomplice," as used in section 6836, must be considered as meaning one culpably implicated in the commission of the crime of which the defendant is accused; that is, an associate, one who knowingly and voluntarily co-operates or aids or assists in the commission of the crime.

The question presented for decision is, when two or more persons play a game of poker for money, checks, credit, or any representative of value, are they accomplices of each other? In the few cases where this question has been passed upon the decisions are conflicting. In the case of *Commonwealth v. Bossie,* 100 Ky. 151, 37 S. W. 844, the Court of Appeals of Kentucky held that each person engaged in a game of chance is not an accomplice within the rule forbidding a conviction on the uncorroborated testimony of an accomplice. The question presented was before the Supreme Court of Alabama in the case of *Davidson v. State,* 33 Ala. 350, and it was held that a participant in a game of cards is an accomplice of his adversary within the meaning of the statute which forbids a conviction on the uncorrobo-

rated testimony of an accomplice. In discussing the question the court said:

"When two or more persons play cards together, although each may be contending with all the rest, it is the combination of all the successive acts of all the different persons, which constitutes the game at cards. Each player, by every act of his done in pursuance of the law of the game, contributes an appointed part to the combination of acts, which together make a game with cards. It is clear, therefore, that in playing at a game with cards each player is a participant in the production of the result which the law condemns. If the statutory offense were winning at a game with cards, then adversaries in the game could not be accomplices. The loser of the game could not be said to participate in the accomplishment of the unlawful object (winning at a game). Our argument does not involve the position that adversaries in fact are accomplices in law. Antagonists in playing cards are not adversaries, as to the thing which constitutes the offense. They agree together as to the playing at a game with cards, and each voluntarily contributes to that end; and they are adversaries as to which one shall perform his part in the game with the highest skill. There is a perfect agreement among the players that each shall perform his part, and the strife between them is which shall do it most skillfully. If a community of purpose be necessary to constitute one an accomplice, our position is still maintainable. It would be absurd to contend that any other common object than to commit the offense was necessary to make one an accomplice with the accused. Those who play together at a game with cards have a common object to play at the game, and that is the offense. They have diverse objects to play with the greatest skill, and that does not constitute the offense. Each sits down to the card table with a common purpose to do that which the law condemns; but each has an ultimate object to accomplish by playing at a game with cards in violation of the law. They concur in the purpose to violate the law. They do not concur in the object to be accomplished by the violation. The offense is complete before it is known who will be the winner."

See, also, *Bird v. State*, 36 Ala. 279, and *State v. Light*, 17 Ore. 358, 21 Pac. 132. In the latter case it was held that the dealer of a game of stud poker is an accomplice with those who bet money or value at such game. Both are necessary to complete the offense, each performing a separate and necessary part in the violation of the statute.

Our Penal Code prohibits the playing of poker, and punishes every person who bets or plays at or against this and other prohibited games as guilty of a misdemeanor, punishable by a fine of not less than $25. The acts of at least two or more persons concurring together are necessary to effect a violation of the statute. Playing at cards is not the means by which the end contemplated by the statute is accomplished; but that is the very thing which constitutes the offense, and, as participation in guilt is what makes an accomplice, it is our opinion that each participant of the game prohibited by the statute is an accomplice of his adversary within the meaning of section 6836, which forbids a conviction on the uncorroborated testimony of an accomplice.

The question as raised in the present case is purely technical. The testimony for the state shows several separate games, entirely independent of each other, thus being separate and distinct offenses, and no election by the state was demanded by the defendant. The witness Hickey testified that, when he went to the schoolhouse, he found the defendant and two others engaged in a game of poker. Hickey's guilt or innocence was not necessarily connected with the guilt or innocence of the defendant in the game played before he became a participant, and, if in the first game Hickey was not a participant, then he would not be an accomplice as to that particular offense, and a conviction of that would stand even on his uncorroborated testimony. Furthermore, as an accomplice his testimony was corroborated by other evidence amply sufficient to justify the verdict. If the instructions requested had been given, the verdict would certainly have been the same, and the trial court imposed only the minimum fine. This court has repeatedly held that a judgment of conviction will not be reversed, unless it shall appear from the whole record that there was error prejudicial to the substantial rights of the defendant, or by reason whereof it seems probable that injustice may have been done.

Perceiving no prejudicial error, the judgment of the county court of Bryan county will be affirmed.

ARMSTRONG, P. J., and FURMAN, J., concur.