## WESLEY W. COLE v. STATE.

No. A-3099.   Opinion Filed Sept. 29, 1919.

(183 Pac. 734.)

1. LARCENY—Person Innocently Aiding in Driving Stolen Cattle—"Accomplice." A person who aids another, at his request to gather up and drive cattle which are stolen, in the absence of evidence that such person so acted with guilty knowledge of the larceny, is not an accomplice in the larceny of such cattle.

2. APPEAL AND ERROR—Credibility of Witnesses—Conflicting Evidence. Notwithstanding a witness is shown to have been previously convicted of the larceny of live stock and served a sentence therefor, and that his general reputation for truth and veracity is bad, the jury may believe his testimony, and if his testimony be sufficient to legally convict the accused of the offense charged, this court will not set aside such conviction, though the evidence be in direct conflict with the evidence for the accused; the credibility of the witnesses being the exclusive province of the jury to determine.

3. APPEAL AND ERROR—Review—Instructions—Refusal. It is not reversible error to refuse a requested instruction not applicable to the evidence, notwithstanding such refused instruction states a correct rule of law.

4. APPEAL AND ERROR—Harmless Error—Instructions. After a misdirection of the jury by the court, where an examination of the entire record discloses that such misdirection has not resulted in a miscarriage of justice, nor constitutes a substantial violation of a constitutional or statutory right, this court is powerless to set aside a conviction on account of such misdirection of the jury.

*Appeal from District Court, Caddo County;*
*Will Linn, Judge.*

Wesley W. Cole was convicted of stealing domestic animals, and he appeals. Affirmed.

*Bristow & McFadyen,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

ARMSTRONG, J. The plaintiff in error, Wesley W. Cole, hereinafter styled defendant, was, together with John Weems and A. J. Blankenship, jointly informed against for the larceny of domestic animals, tried separately, convicted, and sentenced to imprisonment in the penitentiary at McAlester, for a term of two and one-half years. To reverse the judgment rendered, he prosecutes this appeal.

We have carefully read the entire evidence in this case, and, believing that no good would thereby be accomplished, we will not set out the voluminous evidence in detail. The evidence conclusively shows that John Weems, who was jointly informed against in this case with the defendant and his partner, Blankinship, and whose conviction on his separate trial was recently affirmed by this court for the larceny of the live stock described in the information in this case, committed larceny of the live sock as alleged in the information in this case. The evidence as to whether or not the defendant advised, aided, or abetted the said John Weems was in direct conflict. Milt Boydston, a witness for the state, substantially testified that he knew John Weems, Wesley Cole, and A. J. Blankenship; that he knew Blankenship when he was sheriff, and had known him for about five

years; that he had known John Weems about nine years, and Wesley Cole, the defendant, about four years; that a year prior to the trial he saw Cole and Blankinship quite often; that he knew where the slaughter pen of the said Cole and Blankinship was; that it was situated about a mile west of Anadarko; that he was out there quite often; that he knew about the taking on February 26, 1916, of the cattle described in the information in this case on February 25th; that on the 25th he saw Weems down close to the tracks, and had a conversation with him. in which Weems stated that he had some stuff east and north of Gracemont which he wanted to bring down for Cole and Blankinship for butchering, and that he wanted witness to help him bring them down and hold them at witness' father-in-law's and help Cole butcher them out; that on the 26th day of February, 1916, Weems came out to the witness' father-in-law's, where the witness was then living, and said he wanted witness to go up and help him get these cattle; that he went with him, stopped at Gracemont for dinner and to feed their horses, for which witness paid; that said payment for dinner was made by a check on the First National Bank for $2 (which check was identified and put in evidence), he receiving back $1.30, out of which he paid the livery barn 50 cents; that he and Weems went on to the pasture, where a large number of cattle were, and took out eight head which were branded with a circle over the left hip bone; that they took said cattle west about four miles, where they were overtaken by a man on horseback, who held conversation with them; and shortly thereafter Weems and the said person turned off on another road, and before doing so Weems directed witness to take the said eight cattle to witness' father-in-law's, stating that

the defendant would meet him there; that witness took the said cattle to the place directed, and put them in a stalkfield near the home of his father-in-law; that the defendant came to said home about sundown on the following day after said cattle had been taken, and witness and defendant went together out to the stalkfield in which the said stolen cattle were, cut three of them out, and took them through the government pasture to the slaughter pen of the defendant and his partner, and that he held a lantern while the defendant butchered said three cattle, cut the brands from their hides, and put the said brands in his pocket; that subsequently, by request, witness took at separate times two other of said cattle to said slaughter pen, and that a few days thereafter witness and Weems took the three remaining cattle of the eight stolen cattle to the said slaughter pen, and defendant and Weems slaughtered them, and the defendant cut the brands out of their hides and carried them off; that when he carried said fifth animal to the slaughter pen, Blankinship paid him $35 or $40 for his services.

The evidence of the defendant most positively denied all of the material evidence of Milt Boydston so far as it related to his connection with the offense charged, and offered evidence by his family and his connections and his partner, Blankinship, in support of an alibi pleaded. There was also uncontradicted evidence that the witness Boydston had previously been convicted of larceny of cattle, and served a term in the penitentiary of this state, and that his reputation for truth and veracity was bad, and that at the time said larceny was committed Cole, the defendant, and Blankinship were engaged in the wholesale butcher business, and the defendant testified that on Sunday night succeeding the Saturday on

which the said cattle were stolen he (defendant Blankinship) slaughtered two cattle of the heifer kind at said slaughter pen, and one and maybe more than one hog, and in this the defendant was corroborated by the evidence of his brother-in-law, except the brother-in-law testified that three hogs were slaughtered at said time.

The defendant saved exceptions separately to an instruction given, and to instructions requested and refused, which instructions we deem unnecessary to set out *in haec verba.*

The defendant made a timely motion for a new trial, which was overruled and exceptions saved.

The errors assigned and argued in defendant's brief —all errors in petition in error not assigned and argued in brief being regarded as abandoned—are:

"That the evidence is contrary to the verdict rendered; the giving and the refusal to give certain instructions; and the overruling the motion for a new trial."

It is earnestly contended by the defendant that the evidence is insufficient to support the conviction had in this case, and especially so because the evidence of the only material witness for the prosecution was that of an accomplice, whose evidence was not corroborated, and with this contention we cannot agree. After a most careful examination of the evidence, we think there is no evidence showing that the witness Boydston was an accomplice in the theft charged; that it shows that said witness simply aided the codefendant of the defendant in gathering up and driving said stolen cattle, at the request of said codefendant, and does not show that said witness "had guilty knowledge of the larceny charged." *Harless v. United States,* 1 Ind. T. 447, 45 S. W. 133.

"An accomplice" is "one culpably implicated in the commission of the crime of which the defendant is accused; in other words, an associate, one who knowingly and voluntarily cooperates or aids or. assists in the commission of the crime." *Hendrix v. State,* 8 Okla. Cr. 530, 129 Pac. 78, 43 L. R. A. (N. S.) 546.

Applying in the instant case the definition given in *Hendrix v. State, supra,* to the acts of the witness Boydston as shown by the evidence, we do not think that his said acts bring him within said definition of an accomplice; and hence it was not necessary that his evidence be corroborated to sustain a conviction.

It is true that the undisputed evidence shows that said witness Boydston had been previously, on a plea of guilty, convicted of the larceny of domestic animals, and that his general reputation for truth and veracity was bad, but this evidence did not require the jury to reject his testimony in the instant case. It was the peculiar province of the jury, notwithstanding said bad character of the witness, to determine whether or not in the instant case he told the truth, and that they believed that he did is conclusively shown by the verdict rendered, and doubtless, in weighing the conflicting evidence of the defendant and said witness, as was proper they should do, they considered the paramount interest of the defendant in the outcome of the trial.

"The impeachment of a witness does not require that his testimony shall be disregarded, but goes merely to his credibility, which still remains a question for the jury, who should give his testimony such weight as it is entitled to, and may, if they see fit, believe him." 40 Cyc. 2652—2.

"Where a defendant in a criminal case testifies in his own behalf, his interest in the result is a proper matter

to be considered as bearing upon his credibility and it has been considered that his position of itself renders his testimony less credible than a disinterested witness." 40 Cyc. 2652—2, and the many authorities there cited in support of said text.

"(a) Under the law in Oklahoma controverted questions of fact, involving the guilt or innocence of a person on trial in a court of competent jurisdiction, before a jury, are to be settled exclusively by such jury.

"(b) When the accused is on trial and there is a direct conflict in the testimony between witnesses for the state and witnesses for the accused, * * * this court, in the absence of error of law, will not on appeal reverse a conviction." Calvert v. State, 10 Okla. Cr. 185, 135 Pac. 737.

"Where there is any legal evidence to reasonably support the verdict rendered, this court will not disturb such verdict, notwithstanding the evidence is in conflict." Arnold v. State, 15 Okla. Cr. 519, 178 Pac. 897.

It is a pertinent question: Why was Weems, who was accessible to defendant, and who, having been convicted as a codefendant of the defendant, could have no interest or reason to testify other than truthfully, not called by the defendant as a witness? Is it not a legitimate inference that if examined Weems would have testified to facts tending to show that the defendant advised and abetted the commission of said larceny, and hence was not called.

In Graves v. United States, 150 U. S. 118, 14 Sup. Ct. 40, 37 L. Ed. 1021, it is said:

"The rule even in criminal cases is that if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable"—citing

Starkie on Evidence, 54; *People v. Hovey*, 92 N. Y. 554; *Mercer v. State*, 17 Tex. App. 452; *Gordon v. People*, 33 N. Y. 501.

See, also, *Crumes v. State*, 28 Tex. App. 516, 13 S. W. 868, 19 Am. St. Rep. 853; *Jackson v. State*, 31 Tex. Cr. R. 342, 20 S. W. 921; *State v. Weddington*, 103 N. C. 364, 9 S. E. 577; *People v. McGrath*, 5 Utah, 525, 17 Pac. 116; *State v. Toombs*, 79 Iowa, 741, 45 N. W. 300; *Commonwealth v. Clark*, 14 Gray (Mass.) 372; *People v. Hovey*, 92 N. Y. 559; *Commonwealth v. Webster*, 5 Cush. (Mass.) 295, 52 Am. Dec. 711; *Sutton v. Commonwealth*, 85 Va. 128, 7 S. E. 323; *People v. Mills*, 94 Mich. 630, 54 N. W. 488; *State v. Ward*, 61 Vt. 191, 17 Atl. 483; *State v. Mathews*, 98 Mo. 125, 10 S. W. 30, 11 S. W. 1136.

We are of the opinion that the verdict of the jury is sufficiently supported by legal evidence.

The defendant further insists that the court committed reversible error in refusing to instruct the jury "that, in order to convict on the evidence of an accomplice, the evidence must be corroborated." While as an abstract proposition the refused instruction requested correctly states the law, we think the court did not commit prejudicial error in refusing to give said instruction, for the reason that said requested instruction is not applicable to the evidence in the instant case.

"An instruction should never be given upon any question of law which is not applicable to the evidence." *Inklebarger v. State*, 8 Okla. Cr. 321, 127 Pac. 710.

The defendant also urges that the court committed reversible error in instructing the jury that:

"If you find and believe any witness has testified falsely as to any material fact, you may disregard such

witness' testimony, yet you are not bound to do so. It may be considered as the evidence of any other witness when the same is corroborated by other evidence."

Said instruction given is not technically correct, because said instruction "leaves out of consideration the question whether such false testimony was willfully and knowingly given." *Hendrix v. State,* 4 Okla. Cr. 611, 113 Pac. 244.

But we, after an examination of the entire record, think that it appears that the giving of said instruction has not resulted in a miscarriage of justice, and does not constitute a substantial violation of a constitutional or statutory right. Hence we are prohibited by law from setting aside the judgment rendered by the trial court in this case, on account of the giving of said instruction. Section 6005, Rev. Laws 1910.

It follows that the court did not err in overruling the motion for a new trial.

The judgment of the trial court is affirmed, and mandate ordered to issue *instanter.*

DOYLE, P. J., and MATSON, J., concur.