## CLARENCE HENDRIX v. STATE.
No. A-3965.   Opinion Filed Dec. 4, 1922.
(210 Pac. 734.)

(Syllabus.)

1. **Evidence—Sufficient Corroboration of Accomplice—Larceny.** The testimony of the accomplice was sufficiently corroborated.

2. **Evidence—Circumstantial Evidence—Conspiracy.** A conspiracy ordinarily is established largely by circumstantial evidence of the acts and declarations of the parties, indicative of a common design to do an unlawful act.

3. **Evidence—"Accomplice" Properly Defined in Instruction.** The definition of the word "accomplice" as stated in the court's instructions to the jury was sufficient.

4. **Trial—Right to Propound Humiliating Questions on Cross-Examination.** The propounding of embarrassing or humiliating

questions to defendant's witnesses on cross-examination, where pertinent to the issues, does not constitute prejudicial misconduct.

Appeal from District Court, Ellis County; T. P. Clay, Judge.

Clarence Hendrix was convicted of larceny of domestic animals, and he appeals. Affirmed.

C. B. Leedy and W. A. Briggs, for plaintiff in error.

George F. Short, Atty. Gen., and N. W. Gore, Asst. Atty. Gen., for the State.

BESSEY, J. Clarence Hendrix, plaintiff in error, in this opinion referred to as the defendant, brings this appeal from a judgment and sentence of the district court of Ellis county, Okla., rendered on the 16th day of October, 1920. The defendant was convicted of the crime of larceny of domestic animals, and sentenced to serve a term of five years in the state penitentiary.

Seventeen assignments of error are set out in the petition in error filed in this court. These assignments are by counsel for defendant condensed into four specific propositions, which are treated separately in the brief here.

This case, together with the case of State of Oklahoma v. George H. Hunter, Jr., just decided by this court, was tried in the district court of Ellis county, and the state seems to have tried both cases upon a theory that there existed at Hunter's ranch a band of cattle thieves who were acting conjointly and systematically in the larceny of cattle in Ellis county. The persons apparently thus engaged in cattle thieving were George H. Hunter, Jr., L. B. Akins, Clarence Hendrix, and possibly others. A short time before the trial of this cause L. B. Akins was arrested, charged with the crime of burglary, and while in the custody of the sheriff of Ellis

county made a confession in which he disclosed the larceny of a number of cattle, and implicated Hunter and Hendrix in each of the transactions. In the trial of the defendant in this case L. B. Akins testified that about the latter part of August, 1919, he, Hendrix, and George H. Hunter had an agreement that Hendrix and Akins should go out and steal cattle, bring them to Hunter's ranch, and that Hunter should then take charge of them and sell them, the profits derived from the thefts and sales to be divided among them. He also stated that, acting under this agreement, he and Hendrix stole and delivered to Hunter cattle taken from a number of people, including six head of cattle which they stole from a ranchman named Parkins, on or about the 24th of September. This theft was the one charged in the information in this case. Akins testified further that, after he and Hendrix stole these cattle, they drove them to Hunter's ranch, and that the next morning he, Hunter, and Hendrix marked the ears of the cattle, picked Hunter's brand, a figure "2" on the left hip, on them, and turned them in Hunter's field. Akins stated that on the night of the alleged stealing he rode a gray horse belonging to Hunter, while the defendant, Hendrix, rode a horse known as "Keno" which he borrowed from Mr. Fred Byars of Gage, and which seems to have been a noted cow horse in that community. Akins also testified that on the night following this stealing, while he and Hunter were eating supper at Hunter's home, the defendant came to the house, called Hunter and him out, and told them that Mr. Parkins had been over to Mr. Byars making inquiry as to who had had Mr. Byars' horse "Keno" the night before, stating to Mr. Byars that some one had stolen six of his cattle, and that Mr. Byars' horse had been used in the stealing. Akins testified that the three of them immediately after supper destroyed the brands which had been placed upon these cattle, cut off the ears so that the earmarks could not be discerned, drove the cattle

about six or seven miles north from Hunter's ranch, and left them in the road. This is a condensed statement of the testimony of the accomplice L. B. Akins.

It was not shown that Vern Sheldon or T. F. Akins, a brother of L. B. Akins, had anything to do with the larceny. Both of these witnesses corroborate Akins, in that they state that Hendrix was at Hunter's ranch at the times mentioned by L. B. Akins; that it was haying time, and they were at work on the meadow, and they saw Hunter, Hendrix, and L. B. Akins at work with strange cattle, roping, branding, and marking the same; they also testified to the coming of Hendrix to the Hunter home that evening at supper time, and the leaving of the three men immediately.

Parkins, the owner of the cattle, testified as to their loss and the time they were missing. He also testified concerning the tracks made by one of the horses, and that these tracks corresponded to tracks made by the horse "Keno" belonging to Mr. Byars; that he immediately went to Mr. Byars and learned from him to whom he had loaned the horse. Byars testified that at some time, being unable to give the exact date, Hendrix came and borrowed this horse, which was not an infrequent occurrence; that the following day Parkins came to his home and made inquiry as to who had had his horse the night before. It was also shown that when these cattle were found they were about six miles north of the Hunter ranch; that their ears had been cut off, and that they had been freshly branded on the left hip, and, although the brands had been partially destroyed, he was able to recognize upon the left hips of two of the cattle what appeared to be the figure "2," which was the figure and location of the brand of George H. Hunter, Jr.

The defendant testified in his own behalf, and denied any connection with the alleged stealing, or with any conspiracy

to steal cattle. He admitted having been at the Hunter ranch, and admitted having been in company with L. B. Akins in the town of Gage about the time the cattle were stolen; he also admitted having ridden the Byars horse, Keno, stating that he frequently borrowed this horse, and was at liberty to go to Mr. Byars' place and get a horse any time he wanted it. In addition to this he offered the testimony of some of the best citizens of the town of Gage, showing that his reputation for honesty and truthfulness in that community was good, which the state did not attempt to disprove.

Although in his brief defendant confines his argument to four main propositions, he insists that each of the 17 assignments of error are meritorious. This, of course, he has a right to do, and it is the duty of this court to consider each and all of the alleged errors urged when properly reserved, briefed, and presented in the written and published opinions of the court. However, it is not incumbent upon this court to treat specifically each error urged where they overlap or amount to needless repetition, or where they relate to long-established and well-settled questions previously decided in other cases. In the early history of the jurisprudence of the United States and of this state, where the issues involved were new, and often intricate and of the utmost importance as establishing precedents for the guidance of courts and lawyers in cases to follow, there were impelling and potent reasons why the courts should write long, elaborate opinions in which every issue involved was analyzed and the reasons given for the deductions made. But now, when most of the questions raised have been settled by numerous decisions of the courts of this and sister states, it amounts to a useless imposition upon the bench and bar to multiply unnecessarily the pages of our published reports, text-books, and digests.

The massive accumulation of published law reports, text-books, and digests of our complex system, including our fed-

eral decisions and the decisions of 48 states, has become bur-
densome and expensive. Many lawyers of ordinary means are
unable to equip their offices with adequate libraries, and it is
becoming more and more difficult for those who are fortunate
enough to have these facilities to sift out of this mass the
specific principles sought. Hence our purpose to omit from
written opinions such points as are well settled or of minor
importance. The litigants have the right to have every issue
considered, when properly preserved and presented, but they
cannot insist, as a matter of right, that each and all shall be
exhaustively analyzed in the written and published reports.
This court is on the best of terms with the publishers of many
of the law reports, but we have no inclination to increase
their profits or emoluments except where it tends to aid in
the administration of justice.

Counsel for defendant contend that the evidence offered
by the state was not sufficient to corroborate the testimony of
the accomplice L. B. Akins, but at most was only sufficient
to raise a suspicion or inference connecting the defendant with
the crime charged; that the testimony offered was not con-
sistent with the guilt of the defendant, neither was it incon-
sistent with his innocence.

Upon this point we do not agree with counsel for de-
fendant. The coconspirator Akins testified in minute detail
concerning defendant's connection with the crime, and in do-
ing so described the cattle stolen, the horses ridden by each
of them at the time, the place where the cattle were taken,
the manner in which they were treated, with respect to brands
and marks, and the disposal of the cattle when it was learned
that they were suspected of having stolen them. If his story
was a fabrication, some of the details could have been suc-
cessfully attacked. On the contrary, every specific act con-
cerning the stealing of the cattle, as testified to by Akins, is

corroborated by convincing direct or circumstantial evidence, either from persons or by incidents indicating that the facts as related by Akins were as he stated them to be.

First. It is conclusively shown by the testimony of T. F. Akins, Sheldon, Hunter, and Hendrix himself that Hendrix was at the Hunter ranch in company with Hunter and Akins just prior to the time the cattle were stolen.

Second. Hendrix was seen in the town of Gage, near where the cattle were stolen, riding the Keno horse, in company with L. B. Akins, about sundown on the evening before the alleged stealing took place.

Third. The owner of the cattle testified that the tracks made by one of the horses used in stealing the cattle corresponded to the tracks of the Keno horse.

Fourth. Hunter, Hendrix, and Akins were seen on the following day by Sheldon and T. F. Akins, roping and branding cattle on the Hunter ranch.

Fifth. The cattle were found north of the town of Gage, in the condition described by Akins, and it was possible to discern Hunter's brand upon the left hip of two of the cattle.

Sixth. Hendrix admits in his testimony that he was at the Hunter ranch about this time; that he borrowed and rode the Keno horse, and that he and Akins were together in the town of Gage on the evening before the cattle were stolen. We think the corroboration was sufficient to justify the jury in finding, as they did, that the defendant was guilty.

In support of the state's theory of a conspiracy alleged to have existed among defendant, Hunter, and Akins, it was shown that at this particular time there was a series of cattle thefts in that community, and the facts and circumstances indicated that all of them were committed by these men un-

der a joint agreement to steal cattle and divide the profits, and that these and other cattle stolen were taken to Hunter's ranch by Akins and the defendant, where some were slaughtered and others sold or shipped to market. There was direct evidence of such a conspiracy, sufficiently supported by the conduct of the parties and by other circumstances proved.

In proposition No. 3 counsel complains of the instructions given by the court defining the law of accomplice and the corroboration necessary for the jury to find the defendant guilty. The instructions given by the court on this subject, being instructions Nos. 4 and 4½, are as follows:

"You are instructed that a conviction cannot be had upon the testimony of an accomplice unless the testimony of such accomplice is corroborated by other evidence tending to connect the defendant with the offense, and such corroboration is not sufficient if it merely shows the commission of the offense. An 'accomplice,' as the word is here used, means any one unlawfully connected with the crime committed, either as principal offender, as accomplice, or accessory; it includes all persons who are connected with the crime by the commission of any unlawful act on their part transpiring either before or at the time of the commission of the offense as aiding or abetting the commission of said offense or as a participation therein, and whether or not he was present and participated in the commission thereof."

"The testimony of the witness L. B. Akins shows that he was an accomplice in the commission of the offense with which the defendant stands charged, but you cannot find the defendant Clarence Hendrix guilty by reason of the testimony of the said witness, L. B. Akins, alone, until you are satisfied beyond a reasonable doubt that the same has been corroborated by other evidence tending to establish the fact that the defendant did in fact commit the offense charged in the information, and in this connection you are instructed that the corroboration herein mentioned need not be by eye-witness alone to the commission of the offense, but such corroboration may

be by circumstances, and you may take into consideration all the facts and circumstances proven in the case in determining whether or not the defendant is guilty of the offense charged in the information.''

We think that these two instructions are not subject to successful criticism. Those instructions, in connection with the others given, fairly stated the law as applied to the facts in evidence. Instruction No. 4 quoted in part the language of the statute, Section 5884, R. L. 1910. The term ''accomplice'' has been variously defined, and the definition given by the court as applied to facts proved in this case was sufficient. The language used was practically equivalent to that used in the cases cited below. Hendrix v. State, 8 Okla. Cr. 530, 129 Pac. 78, 43 L. R. A. (N. S.) 546; Baldock v. State, 16 Okla. Cr. 203, 182 Pac. 265; Cole v. State, 16 Okla. Cr. 420, 183 Pac. 734.

Proposition No. 4, discussed by counsel for defendant, is the alleged misconduct of counsel engaged in the prosecution of the case. The record discloses that these persons charged with the larceny of cattle were well-to-do people who enjoyed good reputations for honesty and varacity in their home community. Many of the questions propounded were doubtless embarrassing to them, but were for the most part competent as tending to explain the issues involved. So far as can be gleaned from the record, it appears that the efforts of counsel for the state did not go beyond an earnest, determined effort to bring out the facts as they really existed. If it is true that these individuals had hitherto enjoyed good reputations, but were in fact roaming about over the ranches of their neighbors in the nighttime, taking that which was not their own, an energetic prosecution on the part of the state was commendable.

For further facts surrounding this prosecution, see the companion case, Hunter v. State, 23 Okla. Cr. ——, 212 Pac. 1014, just decided by this court.

The judgment of the trial court is affirmed.

DOYLE, P. J., and MATSON, J., concur.