# ED GRAYSON v. STATE.

No. A-2056.   Opinion Filed January 15, 1916.

(154 Pac. 334.)

1.  **INDICTMENT AND INFORMATION—Names of Additional Witnesses—Indorsement.**  In felony cases, other than capital, the names of additional witnesses may be indorsed on an information after the filing of the same, at such time as the court may by rule prescribe.  Procedure Criminal, section 5694, Rev. Laws.

2.  **APPEAL—Discretionary Ruling—Names of Additional Witnesses —Indorsement on Information.**  Under the statute permission to indorse the names of additional witnesses on an information during the trial is a matter within the judicial discretion of the trial court, and unless an abuse of this discretion appears · prejudicial to the substantial rights of the defendant, its ruling will not be reviewed.

3.  **EVIDENCE—Photographic Copy of Deed.**  A photographic copy of a deed, the signature to which was alleged to be forged, is admissible in evidence upon preliminary proof showing that such deed was in the possession of the defendant.

4.  **EVIDENCE—Certified Copy of Recorded Instrument.**  On a trial for the forgery of a deed, where it is shown that the alleged forged deed was duly recorded in the office of the Register of Deeds, a copy of the same duly certified, is admissible in evidence under the provisions of sections 1170, 5099, and 5115, Rev. Laws.

5.  **CONSPIRACY—Criminal Responsibility.**  When a conspiracy is entered into to cheat and defraud any person of any property, all persons who engage therein are responsible for all that is done in pursuance thereof by any of their co-conspirators until the object for which the conspiracy was entered into is fully accomplished.

6.  **EVIDENCE—Acts and Declarations of Co-conspirators.**  Where the evidence tended to prove that certain persons entered into a conspiracy to forge a deed for the purpose of defrauding another person of the land therein described, the profits to be a division of the land or a division of the proceeds, anything said or done in furtherance of the conspiracy by any of said conspirators, between the execution of the deed and the accomplishment of the further purpose of the conspiracy, is admissible in evidence against a co-conspirator on a prosecution for the forgery.

*Appeal from District Court, Muskogee County;*
*R. C. Allen, Judge.*

Ed Grayson, was convicted of forgery and appeals. Affirmed.

*Crump, Crump & Garrett* and *Eaton & Cowley* of counsel, for plaintiff in error.

*W. E. Disney,* Co. Atty., *W. W. Cotton* and *Francis Stewart,* Asst. Co. Attys., for the State.

DOYLE, P. J. The plaintiff in error, Ed Grayson, was convicted of forgery in the first degree, and in accordance with the verdict of the jury was sentenced to imprisonment in the state penitentiary for the term of seven years. The information charged him with the forging of a general warranty deed to the southwest quarter of section 20, township 14 north, range 13 east, situated in the county of Okmulgee. The deed purported to be executed by Jordon Thompson to one W. R. Rogers, consideration named twelve hundred dollars. It bears date of the 25th day of October, 1912, and acknowledged before F. Cleo Hoover, a notary public in and for Muskogee county on said date.

The evidence for the state tends to show that the legal title to the land at the date of the deed was in Jordon Thompson, a Creek Freedman, twenty-one years old at that time. That about two weeks before the date of the purported deed the defendant met Jordon Thompson in Okmulgee city, and asked Thompson to take a trip with him to the Dallas fair; that a few days later he asked Thompson where his land was and said to him, "I want you to go up to some office and identify me as Ed Grayson by so doing I can beat some fellow out of a lot of money," and Thompson declined to go; that the next day the defendant called at Thompson's house with Elnora Davis and Gracie Jones, and wanted the defendant to go hunting and then down to see the girls that night. On the 24th of October, the defendant called at Thompson's house with Ethel Thompson, Jordan was not at home and he left a letter for him to come to town and take a girl to the show, and to write an answer at once. That for a week the defendant made repeated efforts to obtain the signature of Jordan Thompson and made statements that if he got his signature he could get some money for it. An accomplice testified that the defendant was present

when the deed was forged. He was corroborated by another wit-
ness, who was an innocent tool of the forgers. He admitted to
another witness that he was in Muskogee and helped in the
forgery, described how it was done and the notary's office. The
deed was received through the mail on the 26th day of October,
1912, by the register of deeds of Okmulgee county to be recorded;
was duly recorded and returned as directed to W. R. Rogers, Iola,
Kansas. On the 28th day of said month Grace R. McClory
delivered to the register of deeds a purported deed to said land
from W. R. Rogers to Melvin Thomason, which deed was duly
recorded and delivered to her. That Steve Grayson, a brother of
the defendant Melvin Thomason and Grace R. McClory conspired
with the defendant to defraud Jordon Thompson, and were present
when the deed was forged.

The testimony tending to show the circumstances of the
forgery was substantially as follows:

Nippie Brown testified that he met the defendant October
25th, in McRae's office, on South Second street, Muskogee, and
that the defendant asked him if he would like to make some
money. He said, "Yes." The defendant brought a white man
over, who asked him if he could read or write, and he said, "No."
Steve Grayson, the defendant's brother, was present; heard them
talk about the Jordon Thompson land; they went in another room.
When they came back Steve Grayson gave the white man a deed.
The white man wrote Jordon Thompson's name on it and asked
the others if it was all right. They then went down to Mrs.
Josephine Hill's and then went to another white man's house and
came on to the Barnes building. The first white man didn't come
up stairs, the other with the defendant and witness went to the
notary's office; saw a white lady; the white man gave a card to
the lady and the lady looked at the card and he gave her the papers
and the lady took the acknowledgment. The first white man called
himself Rogers, but he was Melvin Thomason. Saw the defend-
ant and his brother Steve and the white man that called himself
Rogers at the depot that evening. Steve Grayson in the defend-
ant's presence told witness that he "better not ever testify against

him," saying: "You never done us no good and you never done us no harm. Here is a dollar, go and get you something to drink."

R. O. Wipperman, testified that he knows Melvin Thomason and Nippie Brown, not prepared to say whether the defendant was the other man or not. Melvin Thomason came to his home on the evening of October 25th with Nippie Brown and another negro. Thomason asked for witness's father; had seen Thomason before in his father's office. Thomason wanted a notary. After some conversation witness went with Thomason to find a notary thinking Thomason was a client of his father. Thomason gave the name of Wallace. Thomason left them at Fourth street and Okmulgee avenue, saying that he had some parties to see and handed witness the deed and a silver dollar, and saying: "You go on with these negroes and find a notary and I will meet you at Third and Broadway. The negro, Nippie Brown was introduced to him as Jordon Thompson; that he went to the Turner hotel and found Cleo Hoover's name in the directory, and went to her office in the Barnes building. The deed was signed with an indelible pencil. Nippie Brown acknowledged, signing the deed. The real Jordon Thompson was not with them.

On behalf of the defendant, A. C. McRae testified that he was a lawyer; that Steve Grayson was in his office in Muskogee on October 25, 1912, and made a contract for the purchase of the Luvanda Powell allotment; that neither Melvin Thomason, Nippie Brown, nor Ed Grayson were in his office that day.

Steve Grayson testified that he was a brother of the defendant, and was at McRae's office on the 25th; that neither Nippie Brown, Melvin Thomason, nor Ed Grayson called at McRae's office that day. That he went home with Ed Grayson that night on the train.

Grace R. McClory testified that she and Melvin Thomason were in Okmulgee October 25th; that she took the deed; W. R. Rogers to Melvin Thomason, and had it recorded. That she did not make any erasures on a deed.

The defendant as a witness on his own behalf testified that he went out to Jordon Thompson's home three times, once with Elnora Davis and Grace Jones and again later with Ethel Thompson. He denied telling them about wanting Jordon Thompson's signature. Was in Muskogee October 25th on a pleasure trip, and met a fellow representing himself to be Rogers, who wanted him to help get Jordon Thompson's land; that Rogers went away and later came back with Nippie Brown. He denied that he had ever admitted that he was connected with the forgery.

In rebuttal, Geo. H. Lessley and C. A. Ballantyne, expert stenographers and typewriters testified that it was their opinion that the deed in question and the contract between McRae and Steve Grayson were written on the same typewriter.

The action of the court below in permitting the county attorney to indorse the names of additional witnesses on the information after the same was filed, is assigned as error.

It appears from the record that the information was filed January 27, 1913, and that the trial of the case commenced on the 24th day of February; that the names of the following witnesses, R. O. Wipperman, Grace Jones, Elnora Davis, Ethel Thompson, C. H. Condon, and F. B. Bayes, were indorsed at least three days before the commencement of the trial, and a written notice containing such names was duly served upon the defendant.

Our statute provides that the county attorney shall indorse on the information, "the names of the witnesses known to him at the time of filing the same. He shall also indorse thereon the name of such other witnesses as may afterwards become known to him, at such time as the court may by rule prescribe." (Section 5694 Rev. Laws.) It follows that there was no error in the action of the court.

It is also contended that the court erred in permitting the county attorney to indorse the names of additional witnesses on the indictment at the trial of the case. It appears that the following additional witnesses were permitted to be indorsed

during the trial, Josephine Hill, Benjamine Martin, and R. E. Disney. The last two witnesses did not testify to anything that affected the substantial rights of the defendant. Their testimony related merely to the possession of the alleged forged deed by the defendant's counsel, and that the county attorney had been unable to procure it. In other words, it was merely preliminary proof made by the county attorney before he offered photographic and certified copies of the deed in evidence. It was not evidence in chief. The existence or location of an instrument is a preliminary question for the court to be decided before secondary evidence is admissible. Their testimony merely concerned the admissibility of evidence, and was not the evidence itself. Under the statute permission to indorse the names of additional witnesses on the information at the trial is a matter resting entirely within the sound discretion of the trial court, and, unless it clearly appears that it was an abuse of discretion, and that it was prejudicial to the substantial rights of the defendant, it will not be held to be reversible error.

*Colbert* v. *The State,* 4th Okla. Cr. 500, 113 Pac. 588;

*Starr* v. *The State,* 9th Okla. Cr. 210, 131 Pac. 542.

In our opinion there was no error in permitting the indorsement of the names of the witnesses on the information.

Error is assigned on the action of the court below in admitting photographic copies of the deed in question and of the signature upon said deed, and in admitting certified copies of the deed and of a deed purporting to be from the grantee named in the alleged forged deed to Melvin Thomason.

Both the photographs and the certified copies were secondary evidence. They were, therefore, upon any view, admissible as such if the best or primary evidence was satisfactorily shown to be unavailable to the state. It was shown by the preliminary proof that the state did not have possession of the deed in question and never had possession of it and was unable to procure it. The deed was traced to the possession of counsel for the defendant. It was therefore in the possession of the defendant,

since it was in the possession of his counsel, when the state last had trace of it.   Upon the question of introduction of certified copies of deeds, our statute provides as follows:

"All instruments affecting real estate and executed and acknowledged in substantial compliance herewith, shall be received in evidence in all courts without further proof of their execution; and in all cases where copies or other instruments might lawfully be used in evidence, copies of the same, duly certified from the records by the register of deeds may be received in evidence; and if the same need not be recorded to be valid for the purpose for which such evidence is offered, a copy duly verified by oath or affidavit of any person knowing the same to be a true copy, may be received in evidence."

Section 1170 Rev. Laws.

"The books and records required by law to be kept by any county judge, county clerk, county treasurer, register of deeds, clerk of the District Court, justice of the peace, police judge or other public officers, may be received in evidence in any court; and when any such record is of a paper, document, or instrument authorized to be recorded, and the original thereof is not in the possession or under the control of the party desiring to use the same, such record shall have the same effect as the original; but no public officer herein named or other custodian of public records, shall be compelled to attend any court, officer or tribunal sitting more than one mile from his office with any record or records belonging to his office or in his custody as such officer."

Section 5115 Rev. Laws.

"Copies of all papers authorized or required by law to be filed or recorded in any public office, or of any record required by law to be made or kept in any such office, duly certified by the officer having the legal custody of such paper or record, under his official seal, if he have one, may be received in evidence with the same effect as the original when such original is not in the possession or under the control of the party desiring to use the same."

Section 5099 Rev. Laws.

Section 5882 reads in part as follows:

"Except as otherwise provided in this and the following chapter, the rules of evidence in civil cases are applicable also to criminal cases."

See *Crump* v. *The State*, 7th Okla. Cr. 535; 124 Pac. 632, holding admissible certified copies of deeds duly recorded.

See *Luco* v. *U. S.*, 64. U. S. 515, 16 Law Ed. 545, holding admissible photographic copies of records.

In our opinion the photographic copy and the duly certified copies of the deeds duly recorded in the office of the register of deeds, were properly admitted.

It is next insisted that the court erred in admitting the testimony of Josephine Hill, as to statements made to her by Melvin Thomason; Steve Grayson, and Grace R. McClory, in the absence of the defendant, and made after the date of the forged deed.

Josephine Hill testified that Melvin Thomason and Grace R. McClory called at her home in Muskogee on October 25th and that evening Melvin Thomason and Nippie Brown called at her home and asked her to show them where a notary public lived, and she told them to go to Mr. Wipperman. That the following week Melvin Thomason told her not to say anything about their being at her house about this business; and wanted to know if she could find him some erasing acid, and she gave him some, and he said that Mrs. McClory had the signature of Jordon Thompson, which she had taken from the affidavit that Jordon Thompson made and filed in his civil suit to set aside the forged deed. Also that Steve Grayson told her he was going to swear that he was in the Barnes building when they went up to Miss Hoover's office, and that it was Jordon Thompson who went up there with them. Also that Grace R. McClory told her that she had traced the name of Jordon Thompson on the deed with ink and had put the "J" on before it was dry and it blotted, and that Melvin Thomason signed the name of Rogers and mailed the deeds back to her to be recorded. It appears that the testimony objected to was admitted by the court under the theory of the state that the defendant had conspired with these parties to procure by forgery and fraud

Jordon Thompson's land.   It is insisted by counsel for the defendant that the conspiracy, if any, in this case ended on the 25th day of October, the date of the alleged forgery, and therefore the testimony objected to was inadmissible.   In support of their contention they cite the case of *Wells* v. *The State,* 5th Okla. Cr. 22, 113 Pac. 210.   We think the doctrine of that case has no application here.

Our penal code defines a criminal conspiracy as follows:

"If two or more persons conspire, either:

First_____,

Second_____,

Third_____,

Fourth.   To cheat and defraud any person of any property by any means which are in themselves criminal, or by any means which, if executed, would amount to a cheat or to obtaining money or property by false pretenses."   (Section 2232 Rev. Laws.)

In the case at bar the conspiracy was to obtain the property of Jordon Thompson, not merely by one criminal act, but by a series of criminal acts.   The first criminal act was the alleged forgery; then came the utterance of the alleged deed, the filing of it for record; then the second forgery to get the title of the land in the name of Melvin Thomason, and the utttering and filing of that forgery.   The forgery of the letters regarding the deeds and false personation.   The evidence tended to prove that the fruits of that conspiracy had never been divided.   The conspiracy extended so far as the record in this case is concerned up to the time of the trial, for two of the conspirators at least were defending their alleged title to Thompson's land, in a civil suit in the District Court of Okmulgee county.   When a conspiracy is entered into to cheat and defraud any person of any property, all persons who engage therein are responsible for all that is done in pursuance thereof by any of their co-conspirators until the object for which the conspiracy was entered into is fully accomplished.   And where a conspiracy embraces not merely a series of unlawful acts, but also extends to a division of the fruits and profits of such acts among the conspirators, anything said or done by them, although

after the commission of the unlawful acts, but before a division of the profits of such acts, is admissible against all other conspirators.

*Holmes* v. *State,* 6th Okla. Cr. 541, 119 Pac. 430, 120 Pac. 300;

*Wishard* v. *The State,* 5th Okla. Cr. 610, 115 Pac. 796;

And see *State* v. *Pratt,* 121 Mo. 566, 26 S. W. 556;

*Scott* v. *State,* 30 Ala. 503.

The theory upon which such evidence is admissible is that the conspiracy does not terminate until there has been a division of its fruits and spoils.

See *People* v. *O'Pie* 123 Cal. 294, 55 Pac. 989;

And Wharton Cr. Ev. 9th Ed. 698.

In our opinion the evidence objected to was competent and was properly admitted.

Finally it is insisted that the court erred in refusing the application of the defendant for a continuance when the state had rested its case.

This assignment is based on the action and rulings of the court hereinbefore considered, in permitting the indorsement of the names of additional witnesses.

We think this assignment is without substantial merit. The record in this case is very voluminous, but we have examined it with a purpose to discover whether the defendant has been deprived of that fair and impartial trial to which he is entitled under the law, and have been unable to find any reversible error in the record, and have reached the conclusion that the evidence in the case fully warranted the verdict of the jury. The judgment herein is therefore affirmed.

FURMAN and ARMSTRONG, JJ., concur.