## PAUL V. HADLEY v. STATE.

No. A-2900.   Opinion Filed March 23, 1918.

Rehearing Denied September 24, 1918.

(171 Pac. 485.)

1.  **APPEAL AND ERROR—Question of Fact.**  This court will only set aside a verdict because it is contrary to the evidence, in a case where the jury have plainly decided against the evidence, or where the verdict is without evidence.

2.  **HOMICIDE—Conviction—Sufficiency of Evidence.**  In a prosecution for murder, the evidence reviewed, and **held** sufficient to sustain the conviction with imprisonment for life as the punishment.

*Appeal from District Court, Muskogee County;*
*Chas. G. Watts, Judge.*

Paul V. Hadley was convicted of murder, and he appeals.   Affirmed.

*P. A. Gavin,* for plaintiff in error.

*R. McMillan,* Asst. Atty. Gen., for the State.

DOYLE, P. J.   The plaintiff in error, Paul V. Hadley, and Ida Hadley were jointly charged with the murder of W. J. (Jacob) Giles, alleged to have been committed in Muskogee county on or about the 24th day of March, 1916, by shooting him with a pistol.   Upon their trial the jury rendered verdicts finding "the defendant Ida Hadley not guilty on account of insanity," and finding "the defendant Paul V. Hadley guilty of the crime of murder as charged in the information, and fix his punishment at imprisonment in the state penitentiary at hard labor for life." From the judgment rendered in pursuance of the verdict, the defendant Paul V. Hadley appeals.

The evidence shows: That Paul V. Hadley and Ida Hadley resided in Beaumont, Jefferson county, Tex. That Paul V. Hadley was indicted for assault with intent to kill in Jefferson county, Tex., and as a fugitive from justice was arrested March 20, 1916, in Kansas City, Mo., where he was going under the name of J. O. Kendrick. That W. J. (Jacob) Giles, sheriff of Jefferson county, Tex., was notified of his arrest, and in the meantime Hadley was incarcerated in what is known as the matron's department at the police station. That while held there his wife, the defendant Ida Hadley, visited him several times, and had several conversations with him before Sheriff Giles arrived in Kansas City. That on the 23d day of March, Sheriff Giles arrived in Kansas City with a requisition from the Governor of Texas for Paul V. Hadley. That the defendant Ida Hadley met Sheriff Giles at the police station and requested the sheriff to allow her to return to Texas with her husband. That in response to that request Sheriff Giles replied that she could come if she wanted to, but she would have to pay her own railroad fare. That she then gave the money to Mr. Sanderson, who was present, to purchase a ticket for her, which he did. That Sheriff Giles, with both the defendants, left Kansas City on a train called the "Katy Limited" at 5:30 p. m. on the 23d day of March, 1916, which train arrived in Muskogee just after midnight the next morning. That before leaving Kansas City, Ida Hadley requested Sheriff Giles to remove the handcuffs from Paul V. Hadley, who had agreed to return to Texas with Sheriff Giles by signing a written waiver of formal requisition. That the sheriff did not grant her request. That when the train left Parsons, Ida Hadley was sitting in the rear seat on the right side of the chair car, and shortly after the

sheriff, with Paul V. Hadley in custody, came out of the smoking car into the chair car, where Hadley sat down by his wife, and the sheriff sat down in the seat across the aisle; that the defendants engaged in a whispered conversation, and Ida Hadley went to the ladies' toilet in the front end of the car several times, and each time returned to her seat by her husband. That at that time the handcuffs had been removed from Hadley, and he was riding just as any other passenger in company with his wife. That Sheriff Giles at that time was sitting across the aisle in the third seat from the rear, the back of which had been reversed, and he was facing the defendants. That when the train left Muskogee, Ida Hadley said to Sheriff Giles, "You might just as well go to sleep; Paul and I are going to sleep in a minute"; that within ten minutes after leaving Muskogee, Ida Hadley got up from her seat and walked to the ladies' toilet in the forward end of the car; that after staying there a few minutes she returned, carrying a satchel or package; that reaching the sheriff, she drew a pistol from somewhere about her person, and shot Sheriff Giles in the back of the head; that the bullet passed through his head and fell on the floor; that the train at that time was passing through the town of Oktaha, Muskogee county; that instantly Paul V. Hadley jumped across the aisle and grabbed Sheriff Giles' pistol and said to his wife, "Hold the gun on all of them; if they move blow their heads off"; that Ida Hadley said to the other passengers in the car, "Don't a man or woman of you get up"; that Paul V. Hadley, after taking the sheriff's pistol, proceeded to go through the pockets of the sheriff, taking papers out of his pockets and sticking them into his own pockets; that about this time the train auditor came into the car, and Paul V. Hadley, holding his pistol on him,

said, "Stop this train, God damn you, or I will blow your brains out"; that the auditor pulled the bell cord, but the train did not stop; that the Hadleys then went out on the front vestibule of the car, and there kept their guns on the auditor, demanding that he stop the train; that the train stopped at Checotah, and the two defendants stepped off; that they walked about five miles south from Checotah and stopped at the home of Mr. Ennis, and asked permission to stop there until morning; that they also arranged to have Mr. Ennis' son drive them to Briartown in the morning; that young Ennis started to drive the defendants to Briartown or Porum; that after going about ten miles he left them at Mr. Stevens' place on Hi Early Mountain; that Sheriff McCune, of McIntosh county, with a posse, arrested the defendants there that forenoon; that Ida Hadley asked Sheriff McCune if Giles was dead, and he told her he was, and she asked, "What are you going to do with us?" and the sheriff said, "We are going to take you to Eufaula, the county seat of the county where you killed this man"; the defendant Paul V. Hadley then said, "I am in it just as much as she is; just as much to blame as she." It appears that Sheriff Giles' never spoke after he was shot, and died two or three minutes after he was taken from the train at Checotah. The defendant Paul V. Hadley did not testify as a witness. The defendant Ida Hadley testified as a witness in her own behalf and in behalf of her codefendant.

In rebuttal R. H. Gaines, for the state, testified that he was in the hotel business at Checotah, and was present with others there when Ida Hadley stated in the presence of her husband, Paul V. Hadley:

"That her husband had shot a man down in Texas; that she expected that some time he would be arrested, and

it was her intention to take him away from the officer's when they started back to Texas with him; that she had put her gun in her grip, and had kept it there all the time since the trouble in Texas; that when her husband was arrested in Kansas City she asked Sheriff Giles' permission to accompany him back to Texas; that her husband knew the gun was in the grip, and they had talked this matter over several times—that is, the possibility of her taking him away from the officer—and when they got to a little city above here that had electric lights, a city of 15,000, 20,000, or possibly 30,000 people, she whispered to Mr. Hadley, 'When we leave this town I am going to take Jake's gun off of him, and you get ready to make your getaway.' "

And that she further stated:

"I asked Giles to lend me his drinking cup; he let me have the cup, and I started back to the wash room; there I took the gun out and put it in my dress, and I came out and down the aisle toward Mr. Hadley and Jake, and when I got near Mr. Hadley I gave him a nod to get ready to get up; that she and Mr. Hadley had frequently talked over the subject that she would use the gun in taking him away from the officer—that they had talked it over after they left Kansas City while sitting in the car."

Other witnesses testified that they were present when Ida Hadley made these statements in the hotel at Checotah, and that at the time she and her husband were handcuffed together.

The record is voluminous, but the foregoing statement of facts is sufficient for the purpose of this opinion.

It appears that upon a sufficient showing that the defendant Paul V. Hadley was a poor person, and by reason of his poverty unable to pay for the same, the court ordered that he be furnished with a transcript of the tes-

timony and the proceedings had on the trial for the. purpose of perfecting this appeal, and for the same reason the petition with case-made was filed in this court without cost. No brief has been filed, but the defendant's counsel appeared and made an elaborate oral argument in support of the only question presented by the record; that is, the sufficiency of the evidence to support the verdict.

Upon a careful reading of the testimony in the case, there can be no doubt that the verdict of the jury is abundantly supported if they believed the evidence given on the part of the state; that the jury did believe the evidence on the part of the state is clearly established by the fact that they found this defendant guilty. The evidence for the state showed or tended to show that the homicide was committed in pursuance of an agreement or understanding between the Hadleys, and that they conspired together to have the defendant, Paul V. Hadley, make his escape from the officer having him in custody.

It is a rule of law that when a conspiracy is entered into to commit a crime, all persons who engage therein are responsible for all that is done in pursuance thereof by any of their conspirators until the object for which the conspiracy was entered into is fully accomplished. *Grayson v. State,* 12 Okla. Cr. 226, 154 Pac. 334; *Irvin v. State,* 11 Okla. Cr. 301, 146 Pac. 453.

Says Mr. Bishop:

"Since a combined act and evil intent constitute crime, and since a thing which one does through the agency of another is the same in law as though performed by his personal volition, one who contributes his will to a crime, by whomsoever the physical act of wrong is done, is guilty of the crime. Hence, when two or more persons unite to accomplish a criminal object, whether through the

physical volition of one, or of all, proceeding severally or collectively, each individual whose will contributes to the wrongdoing is in law responsible for the whole, the same as though performed by himself alone." (1 Bishop, New Crim. Law, sec. 629.)

We are satisfied, from a careful examination of the record and of the proceedings had upon the trial, with respect to fairness, that the defendant had a fair and impartial trial. The charge of the court, to which no objection was made or exception taken, was an elaborate exposition of the law of the case. While the jury by their verdict acquitted the defendant Ida Hadley, that was their peculiar province. No one can tell what considerations enter into a verdict returned by a jury where a woman is on trial. Nevertheless, if the jury made a mistake as to her, that is no reason why this defendant should not suffer the just penalty of the law. Upon the whole case we are satisfied that the verdict was neither against the weight of the evidence nor against the law.

Finding no error in the record, the judgment appealed from is affirmed.

ARMSTRONG and MATSON, JJ., concur.