ROSCOE ARNOLD v. STATE.

No. A-2828. Opinion Filed March 10, 1919.

(178 Pac. 897.)

1. FORGERY—Forgery in First Degree—Information. The information in this case carefully considered, and held to sufficiently charge forgery in the first degree.

2. SAME—Information—Written Release of Mortgage. Where a written release of a mortgage upon real estate to secure the payment of a debt is forged, and the forged instrument is filed for record in the office of the county clerk in the county in which

the land described in the mortgage is situated, the crime of forgery is thereby completed, and it is not necessary to allege in the information and prove that the forged instrument was delivered to and accepted by the party in whose favor such forged instrument was executed.

3.  **TRIAL—Question of Fact—Directed Verdict.** The jury are the exclusive judges of the facts, and, when there is any evidence tending reasonably to show the guilt of the defendant, it is not error to refuse to instruct the jury to acquit the defendant.

4.  **APPEAL AND ERROR—Verdict—Evidence—Reversal.** Where there is any legal evidence to reasonably support the verdict rendered, this court will not disturb such verdict, notwithstanding the evidence is in conflict.

5.  **FORGERY—Release of Mortgage—Evidence.** Where the question of the forging of a release of a mortgage upon real estate to secure an indebtedness is being tried, it is not error for the court to admit in evidence forged deeds to the same land described in such forged release when such forged deeds place the title of said lands described in said forged release in a codefendant, as such deeds tend to show a motive for the execution of said forḡ release.

6.  **TRIAL—Remarks of Court—Reversible Error.** Where remarks are made by the trial judge in the presence of the jury, but not directed to them, in regard to evidence in the case, and the trial judge immediately thereafter states to the jury "he had nothing on earth to do with the facts" and that they "should not consider any remarks of the court except when they were addressed to the jury," and such remarks are not shown to have prejudiced the defendant, the making of such remarks do not constitute reversible error.

7.  **APPEAL AND ERROR—Frauds, Statute of—Parol Evidence—Prejudice.** It is error to admit oral evidence, except as to inheritance, as to title to real estate, but in the instant case the admission of such oral evidence could not have prejudiced the defendant: there being proof of title to the land described in said mortgage otherwise shown in one of the parties averred by the information to have been defrauded.

8.  **FORGERY—Intent to Defraud—Information—Proof.** Where it is averred in the information that two persons have an interest in the land upon which a release of mortgage was forged, proof that one of said persons owned such land is sufficient to establish the intent to cheat and defraud.

9.  **APPEAL AND ERROR—Harmless Error—Release of Mortgage—Evidence—Value.** In a trial for the forgery of an instrument affecting an interest in land, the value of such land is not an

issue in the case, and the admission of evidence as to its value is harmless error.

10. **VENUE—Proof—Reasonable Doubt—Circumstantial Evidence.** Venue does not have to be proven beyond a reasonable doubt, and may be proven by circumstantial evidence; and, where there are circumstances and facts proven reasonably showing that the offense was committed partly in one county and partly in another county, the jurisdiction of the offense is in either county.

11. **SAME—Instruction—Forgery.** In this case the defendant requested the court to instruct the jury that, if the jury found that the offense was committed entirely in another county than the one in which the trial was being conducted, a verdict of acquittal should be returned. **Held,** that the requested instruction was properly refused: (1) Because the evidence did not tend to support the conclusion that the offense was committed entirely within the other county, and (2) because, had the evidence shown that the offense was committed entirely within the other county, it was the duty of the trial judge not to discharge the defendant, but to commit him and hold him for trial in the county in which the offense was shown to have been committed, as provided by section 5892, Rev. Laws 1910.

12. **SAME—Forgery of Mortgage Release—Evidence.** Under the evidence in this case, the district court of Pontotoc county had jurisdiction of the offense of which the defendant was convicted.

13. **FORGERY—Instructions.** The instructions of the court carefully considered, and **held** to correctly state the law.

14. **SAME—Forgery in First Degree—Evidence.** We are of the opinion that the evidence in this case, though in conflict, reasonably supports the verdict of the jury, and that no prejudicial errors were committed.

*Appeal from District Court, Pontotoc County;*
*George C. Crump, Assigned Judge.*

Roscoe Arnold was convicted of forgery in the first degree, and appeals. Affirmed.

*Arnote & Anderson* and *Crawford & Bolen,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

ARMSTRONG, J. The plaintiff in error, Roscoe Arnold, hereinafter designated "defendant," was jointly

informed against with John Osborn for the offense of forgery in the first degree, convicted, and sentenced to imprisonment in the penitentiary at hard labor for the term of eight years. To reverse the judgment rendered, the defendant prosecutes this appeal.

The charging part of the information is as follows:

"That on or about the 16th day of November, 1915, that Roscoe Arnold and John Osborn, in Pontotoc county, state of Oklahoma, did commit the crime of forgery, first degree, in manner and form as follows: That is to say the defendants did, in said county and state at the above-named day and year willfully, fraudulently, falsely, and feloniously make and forge a certain release of mortgage on real estate and instrument in writing, the same purporting to be the act and deed of one H. R. Snyder, and purporting to convey the rights and property of the said H. R. Snyder to one C. S. Hunter, in the real estate and property therein described, said release and instrument in writing purporting to be the act and deed of H. R. Snyder, with the unlawful, wrongful, fraudulent, and felonious intent then and there on the part of them the said Roscoe Arnold and John Osborn to cheat, defraud and injure the said H. R. Snyder and C. S. Hunter, a true and correct certified copy of said false and forged release and instrument in writing aforesaid is attached hereto incorporated herein and made a part hereof, marked 'Exhibit A' for identification, contrary to the form of the statutes, in such cases made and provided, and against the peace and dignity of the state of Oklahoma."

Exhibit A:

### "Release of Mortgage.

"Know all men by these presents: In consideration of the payment of the debt secured thereby, I, H. R. Snyder, a single man, of Pike county, Indiana, does hereby release the one (1) mortgage made to me by C. S. Hunter, a single man, of Bexar county, Texas, dated December 7, 1914, recorded in Book 16, on page 83, which said mort-

gage secured two (2) promissory notes, covering the following described land: The west half of the southeast quarter, section 4, township 3 north, range 6 east, being eighty acres more or less, situated in the county of Pontotoc, state of Oklahoma.

"Whereas, the two notes secured by said mortgage have been paid in full:

"Now, therefore, I, H. R. Snyder, the above-named mortgagee, do hereby remise, release and forever quitclaim all my right, title and interest in and to the above and foregoing described land unto C. S. Hunter, his heirs or assigns, forever.

"In testimony whereof, I have hereunto set my hand and seal this————day of————, 1915.

"H. R. SNYDER.

"STATE OF OKLAHOMA, COUNTY OF POTT.—SS.:

"Before me, A. F. Streight, a notary public, in and for said county and state, on this the 16th day of November, 1915, personally appeared H. R. Snyder, to me known to be the identical person who executed the above and foregoing release, and acknowledged to me that he executed the same as his free, voluntary act and deed for the uses and purposes therein set forth.

"Witness my hand and notarial seal the day and year above set forth.     A. F. STREIGHT, *Notary Public.*

"[Seal.]   My commission expires Feb. 11th, 1919."

Indorsed:

"4129.   Release of Mortgage on Real Estate.   From H. R. Snyder to C. S. Hunter.

"STATE OF OKLAHOMA, COUNTY OF PONTOTOC—SS.:

"This instrument was filed for record on the 16th day of November, 1915, at 1 o'clock p. m., and duly recorded in Book 20, on page 253. Fee——.   A. L. Miles, County Clerk, by Laura Anderson, Deputy."

The defendant demurred to the information for the reason that it does not state facts sufficient to constitute a crime against the laws of the state of Oklahoma, which demurrer was overruled and exception saved.

There was a severance, and the state elected to try the defendant Roscoe Arnold.

The undenied evidence is that the release of the mortgage, the instrument alleged in the information to be the subject of the forgery, was forged; that the said instrument was mailed to the county clerk of Pontotoc county and duly recorded in his office. The evidence as to whether or not the defendant participated in the forgery, and which we deem it unnecessary to recite, was in irreconcilable conflict; but there was legal evidence that the defendant impersonated H. R. Snyder, and in Shawnee, Pottawatomie county, acknowledged, in the name of H. R. Snyder, who was the owner of the mortgage alleged to be released by the said forged release, the execution of said release, before a duly qualified and acting notary public, and there was evidence by witnesses, other than the notary public before whom the acknowledgment was taken, that the defendant was in Shawnee on the day the forged release was acknowledged, and there was evidence tending to show that the said forged release was written upon a typewriter in an office which the defendant frequented and which typewriter the defendant used, and which typewriter had peculiar type marks in its writing, and which appeared in said written release which was forged, and that after the filing of the said forged release for record the defendant and his codefendant in the information appeared together at the Farmers' State Bank of Ada, and defendant's codefendant attempted to borrow $3,000 on the land described in the said release, and there was also evi-

dence tending to show that the name H. R. Snyder signed to said forged release had some of the characteristics of defendant's handwriting.

At the close of the evidence for the state, the defendant demurred thereto, which demurrer the court overruled, and defendant excepted.

The defendant thereupon offered numerous witnesses, in addition to himself, tending to show that on the 16th day of November, 1915, the day the acknowledgment to the forged instrument was executed, he (the defendant) was not in Shawnee, and the defendant positively denied that he acknowledged said forged instrument or was in any wise connected with the forgery of said forged release.

It is earnestly contended by the defendant that the trial court erred in overruling the demurrer to the information because the information does not allege therein that the forged instrument was accepted by and delivered to the party in whose behalf the alleged forged instrument was made, and with this contention we cannot agree. The filing for record in the recording office of the county in which the land named in the forged release was situated was a sufficient evidence of delivery, if delivery thereof be necessary to constitute forgery, and this is alleged in the information, besides the crime of forgery was committed when the forged acknowledgment was executed.

We are of the opinion that the court did not err in overruling the demurrer to the information. *Grayson v. State,* 12 Okla. Cr. 226, 154 Pac. 334.

It is next insisted that the court erred in overruling the demurrer to the evidence, and, while a demurrer to the evidence is not authorized by the Code of Procedure Crim-

inal of this state, we will consider such demurrer as a request for a directed verdict of acquittal, and, so considering, are of the opinion that there was evidence, though in direct conflict, if believed by the jury, sufficient to establish the guilt of the defendant. By an unbroken line of decisions of this court, it is held that where there is any legal evidence to establish the guilt of a defendant, though there be evidence to the contrary, a request for a directed verdict of acquittal should be refused.

The facts being exclusively the province of the jury to determine, and there being evidence, though in conflict, to sustain the finding of the jury, the contention of the defendant, "that the verdict of the jury is not sustained by the evidence and is contrary to law," is without force.

Where there is any legal evidence to reasonably sustain the verdict of the jury, though the evidence be in conflict, that this court is powerless to disturb it has been so often held by this court as not to require a citation of authority in support thereof.

We have carefully considered the remarks of the trial judge during the trial, and especially his statement to the jury on cross-examination of Mrs. Georgia Frazier, "That the jury are the sole judges of the witnesses, if she is a good woman they can detect it, and if she is not they can detect it," and are unable to say that any of the statements made by the trial judge at the trial can possibly be regarded as prejudicial errors. Again, we are impressed that the trial judge was most emphatic in impressing the jury that he (the judge) "had nothing on earth to do with the facts, and that they should not consider any remarks of the court, except when they were addressed to the jury."

It is most earnestly urged that the court committed prejudicial error in admitting in evidence a deed from Marshall Eskridge to C. S. Hunter, and a deed from C. S. Hunter to Herbert Smith, and a deed from Herbert Smith to John Osborn, all of said deeds being for the land described in said forged release of mortgage, and all of said deeds being forged deeds, and with this contention we cannot agree, for the reason that the said forged deeds tended to show a motive for the execution of the said forged release, and especially as it was shown that said forged deeds were written upon a machine having the same distinctive characteristics as the typewriter upon which the forged release was written, and also tended to show that the said forged deed made a part of a chain of wrongdoing of which the forged release was a link, and also tended to show the connection of the defendant with the offense with which he was charged.

"Evidence is admissible that tends directly to prove the defendant guilty, although it may also tend to prove a distinct felony and thus prejudice the accused." *(Joe Vickers v. United States,* 1 Okla. Cr. 452, 92 Pac. 467.)

It is a fundamental principle of law that title to land must be proved by a writing, or by showing title by inheritance, and the court committed a technical error in permitting Mr. Eskridge to prove by parol his interest and title to the land involved in this case; but we are at a loss to understand why such error should work a reversal in this case, because, if the evidence showed that it was intended by the forged release to defraud and injure H. R. Snyder, it was not necessary to also prove the intent to defraud and injure C. S. Hunter, and hence if the evidence of Hunter as to his interest in the land, which is the subject of the forged releases, had been excluded, the evi-

dence is sufficient to sustain the averments in the information as to the intent to defraud and cheat.

It is also insisted that, from the fact that the state was allowed to show the value of the "Jones farm," the land described in the forged release, it was error for the trial judge to refuse to permit the defendant to show that the Jones farm was of less value than shown by the state. We are unable to see how the value of the Jones farm could in any wise have any bearing on the guilt or innocence of the defendant, and we are of the opinion that the court should not have permitted such immaterial evidence injected into the case; but certainly the value of the land could not have prejudicially affected the defendant.

The evidence of Mrs. John Roland as to the character of Mrs. Georgia Frazier was on motion of the defendant stricken, and the jury properly instructed not to regard it. This cured any injury that could have resulted to defendant from Mrs. Roland's evidence.

The court struck the answers of Ruby Loveman to improper questions asked and answered by her, and properly instructed the jury not to consider said answers, and this we think fully relieved the defendant from any injury that could possibly arise from said answers to said improper examination by the county attorney.

The defendant complains most insistently that the court did not correctly instruct the jury, and that, notwithstanding that the record does not show that the court was requested to so instruct the jury, the court should have instructed the jury:

"That if the release was entirely executed in Pottawatomie county the district court of Pontotoc county would have no jurisdiction, and, if they should find such to be the fact, then their verdict should be for the defend-

ant, for the reason that the district court of Pontotoc county had no jurisdiction."

Conceding that, as claimed by the defendant, "it was the duty of the court, whether requested or not, to charge the jury as to the law applicable to every statement of fact formerly submitted by the evidence," the contention "that the court should have directed the jury to acquit the defendant if the entire venue of the offense was in Pottawatomie county" is without merit, and, had an instruction to said effect been asked, the court would not have erred in refusing to give such instruction, for the reason that the same would have been in conflict with section 5892, Rev. Laws 1910, which reads:

"If the offense was committed within the exclusive jurisdiction of another county of this state, the court must direct the defendant to be committed for such time as it deems reasonable to await a warrant from the proper county for his arrest, or if the offense be a misdemeanor only, it may admit him to bail in an undertaking, with sufficient sureties, that he will, within such time as the court may appoint, render himself amenable to a warrant for his arrest from the proper county, and if not sooner arrested thereon, will attend at the office of the sheriff of the county where the trial was had, at a time particularly specified in the undertaking, to surrender himself upon the warrant, if issued, or that his bail will forfeit such sum as the court may fix, and to be mentioned in the undertaking; and the clerk must forthwith transmit a certified copy of the indictment or information, and all the papers in the action filed with him, to the county attorney of the proper county, the expense of which transmission is chargeable to the county."

We have carefully considered the instructions given and the instructions requested and refused, and find that the action of the court in the instructions given and the

instructions refused is free from error. Section 5612, Rev. Laws 1910, provides:

"When a public offense is committed, partly in one county and partly in another county, or the acts or effects thereof constituting or requisite to the offense, occur in two or more counties, the jurisdiction is in either county."

Venue does not have to be proved beyond a reasonable doubt. *Ed Brunson v. State*, 4 Okla. Cr. 467, 111 Pac. 988; *Gritts v. State*, 6 Okla. Cr. 534, 118 Pac. 673, 120 Pac. 669; *Fuller v. Terr.*, 2 Okla. Cr. 86, 99 Pac. 1098.

"Venue may be proven by circumstantial evidence." (*Gritts v. State*, 6 Okla. Cr. 534, 118 Pac. 673, 120 Pac. 669; *Fuller v. Terr.*, 2 Okla. Cr. 86, 99 Pac. 1098; *Filson v. Terr.*, 11 Okla. 351, 67 Pac. 473.)

We are of the opinion that there is evidence to show that the forged paper was written in Pontotoc county, that it was filed for record in said county, and that the circumstances proved in connection with said transaction sufficiently show that the "acts or effects thereof constituting or requisite to the offense" were done by defendant in Pontotoc county, and that consequently the district court of said county had jurisdiction of the offense of which the defendant was found guilty.

We are of the opinion that the affidavit of a convict that he committed the offense of which the defendant was convicted, filed as the basis of a new trial upon the ground of newly discovered evidence, did not entitle the defendant to a new trial as a matter of right, but called into exercise the sound discretion of the trial court, and, it not being shown that the overruling of said motion was an abuse of such discretion, the overruling of said motion was not prejudicial error. *Ryal v. State* (No. A-2801) recently decided by this court, but not yet officially reported, and the authorities therein cited.

The record shows that the defendant was accorded a fair trial, and that he was defended by able attorneys, who brought to bear in defendant's defense 'every possible theory, even the most technical, to exonerate the defendant, and in this court the efforts of his attorneys left nothing undone in oral argument and in their exhaustive brief, of which the defendant can rightfully complain.

The judgment of the trial court is affirmed.

DOYLE, P. J., and MATSON, J., concur.