Allan R. SISSON, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–13276.

Court of Criminal Appeals of Oklahoma.

Jan. 22, 1964.

Rehearing Denied Feb. 17, 1965.

Second Petition for Rehearing Denied Aug. 2, 1965.

**56**

John B. Ogden, Oklahoma City, Bishop & Bishop, Seminole, for plaintiff in error.

Charles Nesbitt, Atty. Gen., J. Dennis Ryan, Atty., Oklahoma Securities Commission, Oklahoma City, Hugh H. Collum, Asst. Atty. Gen., for defendant in error.

PER CURIAM.

This is an appeal by Allan R. Sisson, plaintiff in error, defendant below, from a conviction by a jury entered on May 15, 1962, in the Superior Court of Seminole County, Oklahoma, on a charge by information of selling securities on October 16, 1959 without the same being registered as provided by Title 71, § 301 to § 305, inclusive, Oklahoma Statutes annotated. The foregoing charge is within the penalty provisions of § 407 of said Title.

The alleged transaction involved 1000 shares of The Future Security Life Insurance Company of America for the sum of $2000. Upon the finding of guilt, the jury fixed the punishment at a fine of $500.-00. Judgment and sentence was entered accordingly, from which this appeal has been perfected.

Briefly, the facts involved as found by the jury, disclose that the securities involved were 1000 shares of The Future Security Life Insurance Company of Amer-ica sold at $2.00 per share. The State's case established the offer was made to Marion K. Khoury of Konawa, Oklahoma, in his store in Seminole County. The sale was consummated after numerous conversations (probably as many as fifteen or more), but it was agreed that to consummate a sale such as this would generate enthusiasm, if the deal could appear to have been closed at the corporation shareholders' organization meeting in Oklahoma City on October 16, 1959. Hence, a check was delivered to Mr. Allan R. Sisson, sales promotion agent for the company, for $4,000.-00 in Oklahoma City, Oklahoma at said meeting. It is not clear why the check was made for $4,000.00 instead of $2,000.00. It is possible that it was a part of the promotion gimmick to make the check for $4,000.-00 instead of the agreed sum of $2,000.00. The next day Mr. Khoury wanted to get the $4,000.00 check back and execute a check for the $2,000.00 purchase price which he should have issued in payment for the stock. By that time, he was back in Konawa. It appears that he contacted the defendant, Sisson, and directed the check be mailed back to him so he could effect a correction in a new check for $2,000.00. The record is not clear as to when this was done (at least from the oral testimony of Mr. Khoury). But the $2,000.-00 check appears to have been cashed in Oklahoma City on October 19, 1959. Thus it clearly appears that the change in checks had to be effected between Friday night, October 16, and Monday, October 19, 1959. It is contended that this could not have been done in so short a space of time, but to so contend is to ignore the speed of motorized transportation and the short distance between Oklahoma City and Konawa, as well as a salesman's avidity. The $4,000.00 check could easily have been returned and the $2,000.00 check picked up on Saturday and deposited in Oklahoma City on Monday, October 19, 1959. This transaction as to the check could even have been effected on the same day the check for $2,000.00 was deposited, on October 19, 1959. It is within

the realm of reasonable probability that such was the case.

In any event, it cannot be denied that the offer to sell the unregistered stock was made in Konawa, Oklahoma, which brings this transaction within the provisions of Title 71, § 301, O.S.A. as amended 1959, as follows:

Registration Requirement.

"It is unlawful for any person to offer or sell any security in this state unless (1) it is registered under this act or (2) the security or transaction is exempted under section 401. Laws 1959, p. 334 § 301."

■ The defendant's first contention is that Seminole County did not have venue of the prosecution but that the venue should have been laid in Oklahoma County where the stock transaction, according to Sisson, took place. In this connection, the offer to sell having been made in Seminole County, Oklahoma, it was sufficient to clearly establish venue in Seminole County. The defendant contends that the stock was sold in Oklahoma City where the sale was consummated, which would place venue in Oklahoma County. Conceding that were true (which we do not believe this record supports, the stock check in the correct amount of $2,000.00 actually having been made and delivered in Konawa and the stock delivered there), it avails the defendant nothing under the provisions of Title 22 O.S.A. § 124, reading as follows, to-wit:

"When a public offense is committed, partly in one county and partly in another county, or the acts or effects thereof, constituting or requisite to the offense, occur in two or more counties, the jurisdiction is in either county."

This statute has been unheld in Troup v. State, 51 Okl.Cr. 438, 2 P.2d 591; Arnold v. State, 15 Okl.Cr. 519, 178 P. 897; Re Application of Severn, Okl.Cr., 330 P.2d 748; and under the facts as found by the jury, and the statutes in cases in support thereof, venue is properly laid in Seminole County.

Next it is contended by plaintiff in error that the securities sold were exempt under the law, same being interim pre-organization certificates not required to be registered under the statutes, and such being the case the defendant committed no crime. Under Nelson v. State, Okl.Cr., 355 P.2d 413, it was held:

"* * * proving that the security is exempt is an affirmative defense, with the burden upon the defendant to bring himself within the terms of the exemption claimed under statute. 71 Okl.St.Ann. §§ 1–504, 401."

The defense herein proceeds under the contention that they were interim certificates and further that they were controlled by the laws in force and effect prior to July, 1959, or the laws of 1931 and 1933. Both of these assumptions are entirely false. These securities sold Mr. Khoury were not interim securities, but were personal stocks of defendant Sisson. This conclusion is sustained by the following extract of testimony of defendant Sisson. On cross-examination by County Attorney Pipkin, Mr. Sisson testified as follows:

"Q The one thousand shares of interim certificates or pre-organizational certificates, isn't that what you sold him? A No.

"Q You sold him stock? A Yes, sir, my personal stock."

Hence, it clearly appears that the stock sold Mr. Khoury by defendant Sisson was not exempt pre-organizational or interim stock, but Sisson's personal stock issued to him as a commission by the company, and the proceeds of this transaction went to Sisson personally. Therefore this stock could not qualify even within the exception of Title 71, § 22 of the old law, since section (d) reads in part as follows:

"* * * or the issuance of additional capital stock of a corporation sold or distributed *by it* among its own stockholders exclusively *where no commission or other remuneration is paid or given directly* or *indirectly in con-*

*nection with the sale or distribution* of such increased capital stock." (Emphasis supplied.)

Moreover, under this provision the stock must be sold exclusively by "it" meaning the corporation and clearly not stock issued to a selling agent as a commission. Under the new law, pre-organizational stock to be exempt must have met the qualifications of Title 71, § 401(b), subsection (10): "any offer or sale of a preorganization certificate or subscription if (A) *no commission or other remuneration is paid or given directly or indirectly* for soliciting any prospective subscriber, (B) the number of subscribers does not exceed ten * * *." (Emphasis supplied.)

█ We repeat, all this stock according to the record was issued to Mr. Sisson by his insurance company as part of an agreed sales commission of two per cent to him.

Under these conditions, it was not stock exempt from registration under the provisions of the new law controlling herein, or the old law upon which the defendant bases his contention of exemption.

Furthermore, this stock, according to the testimony herein, was not registered under the provisions of Title 71, §§ 31 to 33 inclusive, necessary to bring the same within the provisions of the old laws of 1931 and 1933, or the new law applicable herein for the foregoing reasons, and for the further reason that the transaction in question herein occurred on October 16, 1959, several months after the Act became effective on July 1, 1959.

Mr. Chambers, Security Commissioner, testified positively there was no compliance with the law either by registration through notification, or by qualification under any provision of the law. Title 71 O.S.A. §§ 303, 304.

We are at a loss to understand why defendant seeks to bring the case under the old law as provided in Title 71, § 503 (1959) reading as follows:

"(a) Prior law exclusively governs all suits, actions, prosecutions, or proceedings which are pending or may be initiated on the basis of facts or circumstances occurring before the effective date of this act * * *."

█ The record herein discloses there was no suit, action, prosecution or proceeding pending which would bring this case within the old law provisions. This was a necessary element to bring this case under the old law and make it applicable herein. But even if this had been such suit pending it would avail defendant nothing since this stock was not within the exemptions allowed by law.

█ The defendant further contends that this was an isolated sale which exempted this stock from qualification or registration. But the facts disclose, from Sisson's own testimony, that he sold some of the stock to more than ten people, thus removing himself and these transactions from the classification of an isolated sale under the foregoing provisions of Title 71 O.S.A. § 401(b), subsection (10) as was defined in Nelson v. State, supra.

It thus clearly appears that the stock sold to Mr. Khoury was not exempt stock and that the same was not registered as by the law provided.

The Attorney General has summarized the defense available to the defendant as why this stock under the provisions of the statute herein involved was not exempt, in the following language:

"Section 401(a) allows for exemptions to certain types of securities which, either due to regulation by other administrative bodies or boards, or due to their non-speculative nature, the law does not require registration.

"Those sub-sections set out in subsection (b) of Section 401 allow for exemptions in certain type transactions.

"(1) Isolated transactions: This exemption is not available due to the fact that Mr. Sisson testified that he had offered these securities and made sales on more than 10 occasions.

"(2) There is no claim that the required information appeared in a recognized securities manual.

"(3) There is no claim that the transaction was effected by or through a registered broker-dealer.

"(4) The facts do not indicate that this was a transaction between the Issuer (the Company) and an underwriter.

"(5) There is no evidence that this is a transaction in a bond or other evidence of indebtedness.

"(6) There is no evidence that this transaction was by an executor or any of the other named officials.

"(7) There is no evidence of the transaction occurring pursuant to a loan or brought about by a pledge.

"(8) Mr. Khoury was not and is not an institutional buyer or a registered broker-dealer. There is no evidence to support such claim.

"(9) Mr. Sisson testified that he made offers and sales to more than ten persons, and, in addition, remuneration was received for the sales under the terms of the Subscription Agreement, Defendant's Exhibit 1,.

"(10) Mr. Sisson denied selling pre-organization certificates. He said that it was his own stock and he had contacted more than ten persons. The exhibit just cited clearly indicates that commissions were to be paid, and Mr. Khoury did pay for the stock.

"(11) This exemption is to be available to issurers (the company) so that they may deliver securities on an exchange offering, pay dividends in stock, or issue securities upon the exercise of a warrant. It is only available if no commission is payable. Mr. Sisson was to get commissions, and he was acting on his own behalf, not in behalf of the Issuer.

"(12) The facts clearly indicate that there was a sale, and the defense makes no denial of this fact. In addition, there is no evidence indicating that a registration statement had been filed under the Securities Act of 1933, (15 U.S.C.A. 77a, 77aa, 77c, 77h)."

The defendant has wholly failed to carry the burden of his affirmative defense by showing that he comes within any of the foregoing exemptions allowed by law. The evidence amply supports the jury's finding in the foregoing regards. In Nelson v. State, supra, we held the jury is the sole judge of the facts, and where there is any competent evidence reasonably tending to support the jury's finding of fact, even though there is a sharp conflict in the evidence, the finding of the jury will not be disturbed.

The conviction is accordingly affirmed.

The Court acknowledges the aid of Supernumerary Judge JOHN A. BRETT in the preparation of this opinion; and after consideration by the members of the Court, the foregoing opinion was adopted by the Court.